THE CITIZENS' NATIONAL BANK OF KANSAS CITY v. DONNELL, Appellant.

In Banc, March 4, 1903.

1. **Reference:** FINDING OF FACTS: APPELLATE PRACTICE., A referee's finding of facts in the appellate court is treated as a special verdict, and will be accepted unless there is no substantial evidence to support it. Because the appellate court has authority to review the referee's finding of facts, and adopt or reject it in whole or in part, it does not follow that it will do so.

2. **Interest: COMPOUNDING SEMIANNUALLY: NATIONAL BANK: PENALTIES.** The laws of Missouri do not permit the compounding of interest oftener than once a year, and a national bank that does so is "guilty of taking, receiving, reserving or charging a greater rate of interest than is allowed" by the national bank law, and as a penalty for such usurious charge the entire interest carried by the note or debt is forfeited.

3. ————: ————: **RATE: NO AGREEMENT.** Where there is no written agreement as to what rate of interest may be charged on coupon interest notes after due, given in amounts which represent seven per cent interest on the principal note, nor any written agreement that any interest is to be paid on overdrafts made by the maker to pay taxes on the property securing the note, no higher rate than six per cent can be charged, and anything in excess of that is usurious, whether the lender be a national bank or other person.

4. ————: **INCLUDED IN RENEWAL NOTE.** Interest included in a renewal note or for which a separate note is executed does not thereby cease to be interest under section 5197, United States Revised Statutes of 1878.

5. ————: ————: **FORFEITURE: USURY ON OVERDRAFTS: MERGER IN RENEWAL NOTE.** The forfeiture of interest prescribed by section 5198, United States Revised Statutes of 1878, for a usurious charge of interest, is not to be treated as pure penalty, but as a defense to the recovery of interest. That forfeiture is not waived or avoided by giving a separate note for the interest, or by giving a renewal note in which is included the usurious interest. But if usurious interest is charged on overdrafts, or on coupon interest notes after they become due, and the whole, including the principal note, are merged into a renewal note, all the interest, legal and usurious, included in the renewal note and agreed to be paid, but which has not actually been paid, may either be credited on the note or eliminated from the judgment, and judgment rendered only for the original debt with interest at the legal rate from the commencement of the suit.

6. ————: **COMPOUNDING: USURIOUS CHARGES ON OVERDRAFTS: RENEWAL NOTES.** A national bank held defendant's note for $15,000 and coupon interest notes in amounts of $525, which was the semiannual interest charge at seven per cent on the principal note. When one of these coupons became due it entered on its books interest thereon for six months at seven per cent, or $18.37, and at the end of the next six months charged interest on the $18.37 and on both coupons then due, or $37.50 in all for such semiannual period, and added these two interest charges to the principal of the two coupons then due and then on that sum calculated interest at the same rate

again for one month, when defendant executed to it a renewal note in which was included the sum of these calculations and the amount of an overdraft on which interest at the rate of one per cent per month as a "penalty" had been added from the time it began. *Held, first,* that the compounding of the interest on the interest notes semiannually was unlawful; *second,* the compounding of the interest on interest at a greater rate than six per cent, in the absence of a written agreement, was unlawful; *third,* the compounding of interest upon interest at usurious rates operated to bar the bank from the recovery of any interest on the renewal note; *fourth,* the taint of usury attaching to the overcharge of interest on the over-drafts continued down the entire line when those overdrafts and that usurious interest were included in the renewal note into which the principal debt, the coupon interest notes and overdrafts were merged, and worked a forfeiture of all interest therein.

7. ———: USURIOUS CHARGES ON OVERDRAFTS: PENALTIES. A charge of one per cent per month on overdrafts in the nature of "penalties" is simply another name for interest.

8. ———: USURIOUS: APPLICATION OF PAYMENT. If a note is in part usurious, a payment must be applied upon the principal debt, in the absence of a special direction from the debtor to apply it to the payment of the unlawful interest.

9. ———: ———: ———: REFERENCE: PRESUMPTION. In the absence of any finding by the referee of a direction by the debtor how a partial payment on a usurious note was to be applied, it will be held to have been a general payment, and being such the creditor was without authority to apply it to the payment of interest, but must apply it on the principal.

10. ———: ———: RENEWAL NOTES. The merging of a principal note and coupon interest notes and overdrafts given to pay taxes on the mortgage securing their payment, and of interest charges on such overdrafts and on the interest notes, into one principal renewal note, and the renewal of this note from time to time, increasing its principal sum as the interest charges add to the indebtedness, is one continuous transaction, one running account, and if any item of the account has become tainted with usury the entire transaction from the time such taint attached, becomes infected, and all interest thereafter, legal and usurious, is forfeitable.

11. ———: ———: RENEWAL NOTE: PURGING GOOD FROM BAD. Where notes, coupons and overdrafts, some of which have been tainted with usury from the first interest charge, and all being a part of a continuous transaction, have been merged into a renewal note, it will be held that the whole transaction was tainted with usury, and that there can be no segregation of what was not usurious from that admitted to be usurious.

12. ——: ——: PURGED BY RENEWAL NOTE. The giving of a renewal note in which is included usurious interest charges as a part of the principal, does not purge the note of the usurious interest which has not been paid. Even though a renewal note into which the entire indebtness is merged contracts for the payment of a rate of interest at which if the interest on the original debt is calculated from its inception and added thereto the amount will be more than the principal of the renewal note,'yet the written agreement embodied in the note to pay the higher rate of interest does not purge the note of the usurious interest charges entering into it.

13. ——: ——: RENEWAL NOTE: WAIVER. The forfeiture of interest prescribed by the statute is not waived or avoided by the giving of a separate or renewal note in which is included the usurious interest.

14. ——: ——: LOCUS PENITENTIAE: ELECTION TO APPLY 'TO PRINCIPAL. A national bank can not elect to consider the excessive usurious interest which went into a note payable to it as paid on account of the loan, and apply it to and lessen the principal to that amount. It can not elect to apply the excessive charge on the principal at any time before the loan is paid in full. The United States statute says that the charging of a rate of interest greater than is allowed by law shall be deemed a forfeiture of the interest which the note carries with it.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED *(with directions).*

*Edward P. Garnett, John G. Park* and *Rozzelle & Walsh* for appellant.

(1) A national bank is not allowed to "take, receive, reserve or charge" a rate of interest greater than is allowed by the laws of the State where it is located, and in determining the rate of interest it is necessary to look to the laws of the State of Missouri. R. S. U. S. sec. 5197; Bank v. Haseltine, 155 Mo. 65; s. c., 183 U. S. 132. (2) Under the laws of Missouri the plaintiff was not allowed to compound the interest on the Mason note oftener than once a year, and by doing so from December 29, 1893,

to July 12, 1895, it was guilty of charging usury and the Mason note was tainted with usury between those dates. R. S. 1889, sec. 5977 (sec. 3711, R. S. 1899). (3) By the laws of Missouri, plaintiff was not allowed to charge any interest, on the overdrafts, until after demand, and then only at the rate of six per cent per annum, and in no event was allowed by agreement in writing to charge more than eight per cent, and the charge of one per cent per month compounded monthly was without question unlawful. R. S. 1889, sec. 5972 (sec. 3705, R. S. 1899); Laws 1891, p. 169; R. S. 1899, sec. 3706; Wolf v. Matthews, 98 Mo. 146. (4) When plaintiff deducted the overdraft, with its accumulated one-per-cent-per-month-compounded-monthly interest, from the $2,500 note and gave defendant credit on its books for only the net balance, it was guilty of "taking, receiving, reserving or charging a rate of interest greater than is allowed" by the laws of Missouri, and hence that note was tainted with usury from its inception. Bank v. Childs, 133 Mass. 248; Bank v. Lewis, 81 N. Y. 15; Harnsey v. Life Ins. Co., 60 Vt. 209. (5) When the plaintiff received, reserved and took out of the $20,000 note in suit the usurious interest charged and calculated into the Mason note, into the $17,500 note, into the $2,500 note, and into the overdrafts, and gave defendant credit for only the small balance of the net proceeds of the loan represented by that note, it was guilty of "taking, receiving, reserving or charging a rate of interest greater than is allowed" by law, which occasioned the forfeiture of the entire interest carried by said note. The note in suit is the direct descendant of, and the culmination of the usurious transaction preceding it. When there has been a series of renewal notes given, the taint of usury in the first follows down the entire line and infects all the descendant obligations. This is well settled by all the text-writers and all the decisions of the courts, both State and Federal. We cite a few cases. The list could be extended almost indefinitely. Brown v. Bank, 169 U. S. 416; Danforth v. Bank, 48

Fed. 271; Bank v. Hoagland, 7 Fed. 159; Overholt v. Bank, 82 Pa. St. 490; Osborn v. Bank, 175 Pa. St. 494; Stephens v. Bank, 88 Pa. St. 157; Marr v. Marr, 110 Pa. St. 64; Bank v. Ragland, 181 U. S. 45; Earnest v. Haskins, 100 Pa. St. 551. (6) The transactions between the plaintiff and the defendant, beginning in 1892 and culminating April 29, 1896, in the note in suit is shown to be a continuous connected running account and in fact "constitutes but one transaction, and the usurious interest in this instance having been carried into the general account and made a part of the sum found due on the final settlement, tainted the whole contract with usury." Pickett v. Bank, 32 Ark. 346; Bank v. Lewis, 75 N. Y. 524. (7) "Taking, receiving, reserving or charging a rate of interest greater than is allowed" by the laws of the State where the bank is located, "when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it or which has been agreed to be paid thereon." This is the plain language of the national banking act, section 5198, and the courts have with singular uniformity construed it to mean just what it says—that "the entire interest" which the note ' "carries with it" is forfeited. Not merely the excess of interest above the legal rate, but "the entire interest" which the note "carries with it" is forfeited. The note in suit "carries with it" all the interest which had been calculated on the Mason note; all the interest which had been calculated on the $17,500 note; all the interest which had been calculated on the $2,500 note; and all the interest which had been calculated on the overdrafts; therefore all the interest on all these transactions is forfeited, and the plaintiff is limited in its recovery to the principal sums. R. S. U. S. sec. 5198; Brown v. Bank, supra; Barnet v. Bank, 98 U. S. 555; Bank v. Dearing, 91 U. S. 29; Haseltine v. Bank, 155 Mo. 75; s. c., 183 U. S. 132; Danforth v. Bank, supra; Tomblin v. Higgins, 53 Neb. 92; Snyder v. Bank, 94 Ky. 231; Bank v. Stauffer, 1

Fed. 187; Bank v. Will, 184 U. S. 155. (8) Usury does not render a note void, so that it has to be set aside and recovery had on the original transaction. The note is not void, but the taint of usury completely destroys its capacity for drawing any interest. It is rendered barren and unfruitful, and neither it nor its descendant obligations can ever draw any interest. The transaction leading up to the note is uncovered in order to discover what interest is included in it, so that all the interest may be stricken out. Bank v. Carlinghouse, 22 Ohio St. 502; Allen v. Bank, 23 Ohio St. 97; Lucas v. Bank, 78 Pa. St. 228; Smith v. Heath, 4 Daly (N. Y.) 123. (9) Plaintiff is not entitled to interest from the commencement of this suit. The taint of usury having completely destroyed the capacity of the note to bear any interest, there was nothing that the plaintiff could thereafter do that would restore to the note or cause of action the power to draw any interest. The vice is in charging usury, and demanding usury by suit does not purge the transaction of usury. Brown v. Bank, 92 Ky. 607; Petersburg Bank v. Childs, 133 Mass. 248; Shaffer v. Bank, 53 Kan. 614; Lucas v. Bank, 78 Pa. St. 228; Danforth v. Bank, 48 Fed. 277; Bank v. Stauffer, 1 Fed. 188; Bank v. Hoagland, 7 Fed. 162; Guthrie v. Reid, 107 Pa. St. 275; Snyder v. Bank, 94 Ky. 231; Cake v. Bank, 86 Pa. St. 303; Bank v. Thompson, 101 Ky. 285; Shunk v. Bank, 22 Ohio St. 512.

*Warner, Dean, McLeod & Holden* for respondent.

(1) "We understand it to be conceded that, as the note in question was given to a national bank, the definition of usury and the penalties affixed must be determined by the national banking act and not by the law of the State." Haseltine v. Bank, 183 U. S. 134. (2) The national banking act permits interest to be charged at the rate allowed by the laws of the State where the bank is located (U. S. stat., sec. 5197), but it does not prohibit the compounding of interest at the highest rate allowed by the State law. Tyler on Usury, 242, 244;

Meyer v. City of Muscatine, 1 Wall. 384. (3) Our statute prohibiting the compounding of interest oftener than once a year must be read in connection with sections 3705, 3706, 3707 and 3708 of our statute relating to interest. By every principle of construction it would not be unlawful or usurious in Missouri, to compound, every six months or quarterly, a note drawing four or five per cent. Such a construction would be absurd. The highest rate of interest would not be exceeded. This is all that the statute is intended to prohibit. In this case at no time did the maximum charge equal seven and one-half per cent. Mills v. Johnson, 23 Tex. 330; Andrews v. Hoxie, 5 Tex. 194; Miner v. Bank, 53 Tex. 561; Martin v. Bank, 5 Tex. Civ. App. 171, 23 S. W. 1032; Watson v. Mims, 56 Tex. 451; Mitchell v. Napier, 22 Tex. 121; Crozier v. Stephens, 2 Willson (Tex. Civ. Cas.) section 802; Brown v. Crow, 29 S. W. 653. (4) Compound interest is not of itself usurious. Mills v. Johnson, 23 Tex. 329; Weaver v. Bank, 53 Tex. 561; Mills v. Bakes, 11 Conn. 495; Lewis v. Pascal, 37 Conn. 318; Turner v. Miller, 1 Eng. (Ark.) 468; Wilcox v. Howland, 3 Pick. 169. (5) Stipulations to the effect that, if the debt be not paid at maturity, it shall draw interest thereafter at a rate greater than the statutory limit, are now generally regarded as penalties to induce prompt payment, and as the debtor has it in his power to avoid paying the penalty by discharging the debt when due, such agreements are held free from usury. Upton v. O'Donahue (Neb.), 49 N. W. 267; Burke v. Raab, 4 Ill. App. 338; Lawrence v. Cowles, 13 Ill. 577; Downey v. Beach, 78 Ill. 53; Chaffee v. Landers, 46 Ark. 364; Jones v. Hubbard, 5 Call (Va.) 211; Call v. Scott, 4 Call (Va.) 402; Pollard v. Baylors, 6 Munf. (Va.) 433. (6) Even if the transactions respecting the overdrafts should be thought usurious and are not purged by the subsequent arrangement when the notes were given, and the interest on the entire indebtedness was made less than eight per cent, it can only affect the overdrafts themselves and not the principal part of the indebtedness. Porter v. Jeffries (S. C.), 18 S . E.

229; Smith v. Heath, 4 Daly (N. Y.) 123; Bank v. Hoagland, 7 Fed. 179; Mills v. Johnson, supra; Smith v. Stoddard, 10 Mich. 152. (7) An agreement to pay interest at a higher rate than allowed by law, in consideration of past forbearance, is held to be free from usury, though it may be unenforcible for want of consideration. Daniels v. Wilson, 21 Minn. 530. (8) In this case it was believed, when the notes were given, that by stipulating that the aggregate interest should be less than eight per cent, the transaction was not usurious. It is universally held that to constitute usury the contract must be entered into with a corrupt usurious intent. Thompson v. Jones, 1 Stew. (Ala.) 556; U. S. Mortg. Co. v. Sperry, 138 U. S. 313. (9) Defendant claims there was no agreement in writing to pay a higher rate than six per cent. The notes given constitute a written agreement. (10) The *locus penitentiae*. McBroom v. Scottish Inv. Co., 153 U. S. 328.

BURGESS, J.—After the issues in this case were made up, the court in pursuance of an agreement between the parties, did on January 15, 1898, make an order referring the cause and all issues therein to R. E. Ball, Esq., an attorney of the Kansas City bar, as referee, to hear and decide all the issues therein, who, in pursuance of said order, heard the evidence, made a finding of facts, and recommended judgment according to that finding.

He found the facts to be as follows:

"This action is on a promissory note for twenty thousand dollars given by the defendant to the plaintiff, dated April 29, 1896, payable on demand, and bearing interest at the rate of eight per cent per annum from date until paid. At the same time, another note for the sum of two thousand dollars was given by the defendant to the plaintiff, payable on demand, bearing eight per cent interest from date.

"A suit on this second note of two thousand dollars is now pending in the circuit court of Carroll county, Missouri. The defense asserted in this suit is that of ·

usury, the execution and delivery of the note being admitted.

"As collateral security to the note here sued on, and to the two-thousand-dollar note mentioned, the defendant pledged with the plaintiff three other notes, secured by real estate, one for twelve thousand dollars, one for six thousand dollars, and one for ten thousand dollars. Nothing has been paid or realized on the securities on account of his indebtedness, except the sum of five thousand dollars, received by the plaintiff on January 26, 1898, from the sale of certain collateral property.

"The history of the indebtedness, for which the note in suit and the two-thousand-dollar note mentioned were given, is as follows:

"On October 29, 1892, the plaintiff, at the request of the defendant, purchased a note made by the defendant and Catherine Donnell, spoken of in the testimony as the 'Mason note,' paying therefor the face of the note and accrued interest up to that date, the defendant paying to the plaintiff the amount of the interest then due, thus leaving the defendant indebted to the plaintiff on account of said note, at that date, in the sum of fifteen thousand dolllars. This note was overdue, and had coupon interest notes attached to it covering the interest that accrued before maturity. By its terms it bore seven per cent from maturity. It was intended by the parties, at the time of its purchase, that the bank should take and hold the note temporarily for the accommodation of the defendant, but time went on and he was not able to pay the note.

"In the meantime he carried a bank account with the plaintiff, and on July 12, 1895, his bank account was, and had for some time prior thereto been, overdrawn several hundred dollars. At that time defendant, not being able to pay either his overdraft or the Mason note, and several payments of interest on the latter being in arrears, arranged with the plaintiff to give a new note, covering all of this indebtedness, and securing a small additional loan. On that date he ex-

ecuted and delivered to the plaintiff his note for $17,500 payable on demand, and bearing interest at the rate of seven per cent per annum, the overdraft and all charges for interest on that and on the note being embodied in the new note.

"On October 1, 1895, he borrowed the sum of twenty-five hundred dollars from the plaintiff, for which he gave his note, payable on demand, and bearing seven per cent interest from date until paid.

"Nothing further was done between the parties until April 29, 1896, when the defendant, being overdrawn at the bank and not having paid either of the notes mentioned, or any interest thereon, made a new arrangement with the officers of the plaintiff bank to give new notes covering the various debts then owing by him, as evidenced by the former notes and his overdrawn bank account. According to the computation of these debts and the interest made at the time, the amount of the new notes given on April 29, 1896, was, as stated: one note for $20,000, being the one here sued on, and another for $2,000, being the note sued on in the action now pending in the circuit court of Carroll county. The reason for taking two separate notes was, that the amount of the defendant's indebtedness, as claimed by the plaintiff, exceeded the amount for which, under the national banking act, the plaintiff was permitted to become creditor to any one individual, and the desire was to dispose of the surplus two thousand dollars of claimed indebtedness separately. At the time of the making of these two notes, the defendant received credit on his individual account, which left a small balance over and above the amount of his overdraft.

"At the time of the making of the $17,500 note, July 12, 1895, there was included in this note the original Mason note of $15,000, three semiannual interest charges of $525 each, and interest on the overdue interest, from the time it was due to the date of the note, also an overdraft charge of $596.74, and an additional advance credited to the defendant on his individual account at the bank of $230.50.

"In making this computation it was agreed that the semiannual interest due and unpaid on the Mason note should bear interest from the date it was due, and it was so computed. This had been agreed to between the plaintiff and defendant at or about the time that the interest was due, and was agreed to by them at the time of making and signing of the $17,500 note. The overdraft included in this note of $596.74 contained charges on the actual amount overdrawn by the defendant of about one per cent a month for the whole time of the continuance of the overdraft preceding the making of the note. These charges were evidenced by interest checks made out from time to time and charged to the defendant's account and returned to him on the balancing of his pass book, with other checks drawn by him.

"At the time of the making of the note sued on and the $2,000 note mentioned, to-wit, April 29, 1896, these amounts were arrived at by computing the amount at that date of the $17,500 note of July 12, 1895, and $2,500 note of October 1, 1895, and an overdraft of the defendant on April 29, 1896, of $919.90, together with a balance on his pass book of $2.42, which made in all $22,-000. The overdraft item in this computation contained charges for some months previous of about one per cent a month on the actual amount overdrawn.

"In both of these settlements of July 12, 1895, and April 29, 1896, the parties intended to and did merge into the notes then made, respectively, all of the indebtedness of the defendant to the plaintiff.

"On July 12, 1895, the item of overdraft as stated was $596.74. Of this amount $569.74 was the actual overdraft and the balance consisted of charges made monthly on account thereof.

"On April. 29, 1896, the item of overdraft was $919.90; of this amount the actual overdraft was $876.36 and the balance consisted of the monthly charges. In each instance the whole amount of the note and the items of indebtedness which went into it, was figured

between the plaintiff and the defendant and agreed to and the notes accordingly executed.

"The defendant in each instance agreed to the interest charges and on overdue interest, and also knew of and agreed to the charges made on his overdrafts.

"At the date of the two settlements made, on which the new notes were given, all the items of the then existing indebtedness of the defendant to the plaintiff, were by agreement merged together. Taking them altogether and charging interest per annum, without compounding, the rate is less than eight per cent.

"CONCLUSIONS OF LAW.

"Although the evidence taken and returned is voluminous, there is really no dispute in regard to the essential facts of the case. The controversy all arises in regard to the inferences that ought to be drawn from the undisputed facts and the conclusions of law that must result therefrom. The Mason note only drew seven per cent according to its face. The defendant and the plaintiff agreed when the semiannual interest on that note was not paid, that the overdue interest should bear interest, and this agreement was consummated by the giving of the subsequent $17,500 note. This was done, it should be remarked, in connection with the settlement of the overdraft of the defendant, then due.

"I hold that it was competent for these parties to make and consummate that agreement without violation of the usury law, so long as the amount of interest computed fell within the maximum legal limit of eight per cent. The same thing is true of the agreement made by the parties at the time of the execution of the note sued on in this case, and of the $2,000 note on which suit is pending in another court.

"Counsel for both parties have furnished me with able and exhaustive briefs and have argued the questions arising with a great deal of ability and ingenuity. It is contended by plaintiff's counsel that both in the making of the $17,500 note and of the two notes bearing date of April 29, 1896, the plaintiff made a new loan

to the defendant and that those notes were not a renewal simply of the pre-existing indebtedness. I do not concur in this view. I do not doubt that the officers of the plaintiff attempted to put the transaction on that basis and did so in perfect good faith, but under the authorities I am satisfied that the notes in question were, as a matter of law, simply renewals on new terms then agreed upon between the parties of the pre-existing indebtedness.

''Counsel for plaintiff also contend that the charges made on the overdrafts of about one per cent a month were not interest charges, within the meaning of the usury law, but were penalties imposed on the customer of the bank for overdrawing his account. I do not agree to this contention. I think that these charges were essentially interest charges, and if this action were solely for a debt evidenced by that overdraft, I should have no doubt that the making of these charges would preclude the plaintiff from collecting anything but the actual original overdraft. But the defendant, at each of the times in question, was indebted to the plaintiff in several forms by different notes and by his bank account, and in my judgment the merging of these different debts into one, the agreement to the charges of interest made, one with reference to the other, all had the effect in law of mingling the debts and charges so that the real inquiry should properly be, whether on the whole indebtedness the defendant had agreed, by the note in suit, to pay a greater amount of interest than it was lawful for the plaintiff to charge. This he did not do.

''The agreement of the defendant to pay interest, on the overdue interest on the several notes made, preceding the making of the one in suit, was lawful, and when that was consummated by the signing of a new note it was a good consideration for the new indulgence thereby obtained. It seems to me that the only question in this case is the effect on the note in suit of the charge made by the defendant of a usurious rate of interest on the overdraft which formed an item of both

the $17,500 note and of the computation of the debt for which this suit is brought. I think, beyond any doubt, that those charges taken in and of themselves were usurious, but the overdraft, in each instance, formed a very small part of the consideration of the note. The law of forfeiture, according to all of the authorities, should be strictly construed, and when these parties, by mutual agreement, merged all these debts into one, and when the total effect of that merger fails to show *in toto* an illegal agreement, under the usury act, my opinion is that the law has not been violated and that the grave result of imposing a penalty of forfeiting all interest on all the items that entered into that note should not be visited on the plaintiff.

"It seems clear to me from all the authorities, by reason of the merger of these debts in the way stated, that there should be no forfeiture at all, but if any forfeiture should be had, it should only be of all interest charges on the overdrafts that entered into the note in suit.

"The point is made that defendant's answer does not adequately plead usury, in that it does not specifically aver the amount of usury charged and that entering into this specific note, and that the proof also fails to disclose definitely the amount alleged to be usurious.

"I think there is a great deal of force in this objection, but I have preferred to base my conclusion on the broader grounds stated.

"I find the issues in the case for the plaintiff, and recommend judgment on the note for $20,000, with eight per cent interest from April 29, 1896, to the date of the rendition of the judgment, after crediting the payment of $5,000 on January 25, 1898."

And thereafter, within four days from the time of the filing of said report and testimony, to-wit, on May 18, 1898, the defendant filed his motion to re-refer said cause to the referee, which was overruled.

In due time defendant filed exceptions to the referee's report, assigning numerous grounds therefor which are unnecessary to set forth.

And thereafter, to-wit, on July 2, 1898, the same being during the April term of said court, A. D. 1898, the court overruled the motion of defendant to re-refer said cause, and also overruled defendant's exceptions to the report of the referee and entered a judgment in favor of plaintiff; to which action, orders and rulings of the court the defendant at the time excepted and still excepts.

And thereupon a judgment was given and entered herein, as follows, to-wit:

"Now on this day comes plaintiff herein, The Citizens National Bank of Kansas City, Missouri, by its attorneys, Warner, Dean, Gibson & McLeod, and comes also defendant, M. S. C. Donnell, by his attorneys, R. B. Garnett and W. C. Forsee, and the motion of said defendant to re-refer this case, heretofore filed herein, coming on for hearing, the same is by the court taken up, heard and duly considered; and after argument of counsel, and due deliberation, the court overrules said motion to re-refer this cause. And the exceptions heretofore filed herein by said defendant to the report of the referee, Hon. R. E. Ball, coming on regularly for hearing, said exceptions are by the court taken up, heard and duly considered, and after argument of counsel thereon, and after due deliberation the court overrules said exceptions to the report of the referee and each and every one thereof, and the report of said referee heretofore filed herein is by the court taken up, heard and duly considered and said report of the referee in this cause is by the court duly and regularly confirmed in all respects, and the court upon said report of said referee, doth find all the issues herein for plaintiff and against defendant, and doth further find that on April 29, 1896, said defendant, M. S. C. Donnell, for value received, made, executed and delivered his negotiable promissory note of that date to plaintiff herein for the sum of twenty thousand dollars with interest thereon from said last-named date until paid at the rate of eight per cent per annum; and the court doth further find that on January 25, 1898, after

the commencement of this suit, said defendant paid the plaintiff the sum of five thousand dollars on said note, leaving on said last-named date a balance on said note from defendant to plaintiff the sum of $17,782.04, which last-named sum, with interest thereon at the rate of eight per cent per annum from January 25, 1898, is due and owing from said defendant to said plaintiff, together with its costs herein expended and incurred; and the court doth further find that said referee, Hon. R. E. Ball, was engaged for the period of ten days in the trial and consideration of this cause, and that he incurred an expense of seventy-four dollars and twenty-five cents for his stenographer to take the testimony before him as such referee.

"Wherefore it is ordered, adjudged and decreed by the court that plaintiff herein, the Citizens' National Bank of Kansas City, Missouri, have and recover of and from defendant herein, M. S. C. Donnell, the sum of $18,406.79, together with interest thereon from this date at the rate of eight per cent per annum until paid, together with its costs herein incurred and expended; and the court doth further order, adjudge and decree that said R. E. Ball, as referee herein, be and is hereby allowed the sum of one hundred dollars as compensation for his services herein, and that A. P. Barnett, the stenographer who took the testimony in the cause before said referee, be and is hereby allowed for his services as stenographer the sum of $74.25; and the clerk of this court be and is hereby ordered and directed to enter up and charge as costs in this cause the allowances herein made to said referee and stenographer, for all of which execution shall issue herein."

After unavailing motion for a new trial defendant appeals.

Sections 5197 and 5198 (R. S. U. S. 1878), of the National Bank Act are as follows:

"Sec. 5197. Any association may take, receive, reserve, and charge on any loan or discount made, or

upon any note, bill of exchange or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this title.   Where no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest  may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run.  And the purchase, discount, or sale of a bona fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest.

''Sec. 5198.   The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon.   In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred.''

Section 3705, Revised Statutes of Missouri of 1899, provides that ''creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made.''

Vol 172 mo—26.

Section 3706, provides that "parties may agree, in writing, for the payment of interest, not exceeding eight per cent per annum, on money due or to become due upon any contract."

Section 3711 provides that "parties may contract, in writing, for the payment of interest upon interest; but the interest shall not be compounded oftener than once in a year."

Some criticisms are made by defendant on the report of the referee with respect to his finding of facts, but this court has always treated such a report as a special verdict, and refused to interfere unless there was no substantial evidence to support it. [Berthold v. O'Hara, 121 Mo. 88; Utley v. Hill, 155 Mo. 232; Smith v. Baer, 166 Mo. 392.] That this court may, if so inclined, review the finding of facts by the referee in cases of this character, and approve or disapprove it in whole or in part, is well settled, but it does not follow that it will do so. It is not so, however, with respect to the circuit court which has the power, and whose duty it is to review the finding of facts by a referee. [Smith v. Baer, supra; Utley v. Hill, supra.]

But in order to a better understanding of the facts out of which this litigation grew it will not be inappropriate to state them more in detail than did the referee.

On October 29, 1892, defendant owed plaintiff bank $15,000 on the Mason note. On that day defendant paid $175 interest on said note at the rate of seven per cent per annum. This changed the semiannual interest periods.

On June 29, 1893, he paid $525 more, interest to that date. Defendant was unable to pay the next semiannual interest due December 29, 1893, and the then president of plaintiff, Mr. Seeger, to avoid charging off the Mason note as bad paper, on June 30, 1894, put in the cash drawer a sight draft on defendant for $525, in favor of S. W. Campbell, cashier, and this draft was carried as a cash item until February 18, 1895, when defendant, having funds, gave plaintiff a check for it.

In meantime, on or about June 1, 1893, defendant's account with plaintiff began to be overdrawn. He says in his testimony that the bank consented to the overdraft, and this is not denied. On June 1st he was overdrawn $514.52 and on the 13th he reduced the overdraft to $473.52 and on the 22d paid it. But for interest on this overdraft for this time plaintiff inserted among defendant's checks a charge slip or check for $3.14 payable to "int. or bearer" and signed "chg. M. S. C. Donnell." This charge was at the rate of about one per cent per month and was the beginning of a series of transactions of a similar nature. From June 30, 1893, until July 13, 1895, defendant's account was overdrawn in amounts ranging from $435.46 on the first-named day, to $596.74 on the last. At the end of each month the plaintiff charged defendant one per cent or more on his overdraft and put an interest-charge slip among his checks and added this charge to the overdraft. This is shown clearly by the general account kept by plaintiff, introduced in evidence by it. The interest charges on June 29, 1895, had amounted to $122.50; the principal of the overdraft at that time was $474.24 and the defendant had been overdrawn from July, 1893, until July, 1895, only from $435.46 to $474.24, and the $122.50 represents the interest charged by plaintiff on $435.46 two years, or slightly over twelve per cent per annum. No demand was shown to have been made for the payment of the overdraft.

These interest-charge checks were returned to defendant as vouchers.

On July 12, 1895, this indebtedness was renewed. Plaintiff's president, Mr. Seeger, computed defendant's debt on that day to be as follows:

Note $15,000 and interest 7 per cent from December 29, 1893.

| | | |
|---|---|---|
| Semiannual Int. due June 20, 1894.$ | 525 | 00 |
| Int. to December 29, 1894......... | 18 | 37 |
| Semiannual Int. due December 29, 1895 .......... ............. | 525 | 00 |
| Int. to June 29, 1895.............. | 37 | 39 |

| | | |
|---|---:|---:|
| Semiannual Int. due June 29, 1895.. | 525 | 00 |
| | 1,630 | 00 |
| Note ......:..... ............. | 15,000 | 00 |
| Amt. due June 29, 1895........... | 16,630 | 76 |
| Int. to July 12, 1895............. | 42 | 00 |
| | 16,672 | 76 |
| Overdraft ........ ............. | 596 | 74 |
| | 17,269 | 50 |
| Bal. credit on account ........... | 230 | 50 |
| Amt. new notes .................$17,500 | 00 |

This computation was by defendant introduced in evidence. It shows a compounding of interest every six months in violation of section 5977, Revised Statutes 1889 (R. S. 1899, sec. 3711), and the charge of interest upon interest amounting to $59.93.

To the total amount of principal and compound interest claimed to be due on the Mason note, $16,672.76, was added the overdraft consisting of principal $474.24 and one per cent per month interest thereon, amounting to $122.50, and to this was added a credit on general account of $827.24, which eliminated the overdraft and left $230.50 to be checked against. These items aggregated $17,500, and for this defendant gave his note due on demand with seven per cent interest from that date. Plaintiff retained the Mason note as ''collateral security.'' The $17,500 note was introduced in evidence, being attached to the papers in the Carroll county case.

Thus on July 12, 1895, the $17,500 note was executed, and it was composed of the principal of the Mason note ..............$15,000 00

| | | |
|---|---:|---:|
| The usurious interest calculated therein ............ ........ | 1,672 | 76 |
| The principal of the overdraft.... | 475 | 24 |
| The usury charged therein........ | 122 | 50 |

And a small credit account of.....        230 50
                                        ——————————
                                        $17,500 00
So that deducting the interest $1,672.76 and $122.50, in all $1,795.26, we have left $15,704.74, the amount of the principal on July 12, 1895.

On or about September 14, 1895, defendant made three additional notes for $12,000, $6,000 and $10,000, respectively, due five years from date with interest at six per cent per annum, in favor of W. H. Seeger, secured by deeds of trust on real estate. Seeger indorsed and transferred these notes to plaintiff, and it is now holding them also as "collateral security."

On October 1, 1895, defendant made another note for $2,500, due on demand, with seven per cent interest from date, and it was credited to defendant on the books of the bank. At this time defendant's account was overdrawn $267.30, including the usurious interest on the same calculated at the rate of one per cent per month, compounded monthly, and while defendant was given credit on plaintiff's books for $2,500, his net credit was only that amount, less the amount of overdraft and usury calculated therein, and as this usurious charge was taken out of the $2,500 note it infected the same with usury from its inception.. Defendant so testified and it is not disputed.

The $2,500 note of October 1, 1895, was calculated in this way: Defendant testified before the referee as follows: "Mr. Seeger and I sat down to make this note; we calculated among ourselves the amount of money needed to pay taxes with, and such things, and figured it up and went to the book to see how much I was overdrawn and figured the thing up and wrote out a note for $2,500, and paid my overdraft out of it, and gave me credit of the balance of the money which I used in the payment of taxes on the property on which they held the mortgage. My overdraft on the 1st of October was $909.87. On September 30, 1895, I was overdrawn then sufficient for them to charge me $1.55 on my overdraft. They carried it down and calculated

it in the $909.87. And September 1st my account was overdrawn $167.30. This was figured in at a little better than twelve per cent per annum."

The referee then observed: "I think the answers heretofore have been that the interest checks that were put into these various notes were all those that preceded in date the making of the note, and when the next note was made, they included those which were between the date of the former note and that note. For instance, they make a note of $2,500, and up to that time certain interest checks have been returned, and, as I understand his answers, that $2,500 note includes the amount of the original overdraft and the interest checks that up to that time had been made?

"The witness: Yes, sir."

Again: Fitzhugh, president of plaintiff bank, testifies on cross-examination:

"The indebtedness represented in the deposits was put into the notes. I want to say farther that there were deposits made by Donnell that took care of the overdrafts independent of any money loaned by the bank. If we placed to the credit of Mr. Donnell a note of $2,500 on October 1st, on an account which stood overdrawn $909.67, Donnell would receive credit for just what he received. The net credit would be the balance. He had overdrawn at that time only $268. The checks offered in evidence might have been paid after the $2,500 note went to his credit."

While Mr. Seeger, the former president, testified that "no overdraft or penalty entered into the $2,500 note," he explains himself and shows that this penalty did enter into the note. Continuing he says: "I loaned him $2,500 and put the whole $2,500 to his credit to take up his indebtedness." The indebtedness referred to, as shown by the record, is in part these usury charges.

Defendant was obliged to overdraw again, and from November 2, 1895, until after the execution of the note sued on his account was overdrawn. The bank on November 30th charged him $1.70 interest and there-

after on the last business day of each month charged him one per cent or more upon his overdraft and added it to the overdraft as before.

On April 29, 1896, this overdraft including excessive interest was $910.10. The officers of the bank computed the $17,500 note and $2,700 note from their respective dates with seven per cent interest and added in the overdraft with its accumulated compounded interest, making the total $21,997.58. Defendant executed two notes payable on demand, one for $20,000 and the other for $2,000 with eight per cent interest from date. The $20,000 note is the instrument in suit. Plaintiff eliminated the overdraft and credited to defendant on its books $2.42 net.

On January 25, 1898, certain of the real property described in the deed of trust securing in part the payment of the $6,000 "collateral" note was sold and $5,500 was the net proceeds, and the defendant notified the plaintiff to apply the fund to the payment of the said collateral notes for $6,000, but defendant applied it instead to payment of interest on the notes for $22,000 and the balance on the principal of those notes.

And by agreement of parties a transcript of the general account of M. S. C. Donnell, as shown by the books of plaintiff, from October 14, 1892, to May 1, 1896, was introduced in evidence and attached to the report of the referee. It shows a continuous account and transaction between plaintiff and defendant between said dates, and that the note in suit and its antecedents are all a part of said continuous transaction. Every month defendant was charged interest at the rate of one per cent per month compounded monthly on the overdrafts beginning in June, 1893, and culminating on April 29, 1896, in the $20,000 note in suit and in the $2,000 note in the Carroll county case.

These transaction show the following:

The Mason note upon which the interest was paid to December 29, 1893 ..................$15,000 00

| | |
|---|---|
| July 12, 1895, overdraft, less interest figured in the note of $17,500 ................ ............ | 474 24 |
| July 12, 1895, net credit on bank account ................ ........ | 230 50 |
| October 1, 1895, credit by note of that date ..................., | 2,500 00 |
| April 29, 1896, principal of overdraft ........·. .............. | 874 81 |
| April 29, 1896, credit on account.. | 2 42 |
| | $19,081 97 |
| January 25, 1898, credit by proceeds of col.................. | 5,500 00 |
| | $13,581.97 |

The balance of the note is interest.

There can be no question, we think, as to the correctness of defendant's contention, that in charging him one per cent a month upon the overdraft of June, 1893, to July, 1895; in compounding semiannually the interest in the Mason note, and in again charging defendant one per cent a month on the overdraft from November, 1895, to April 29, 1896, plaintiff was guilty of exacting and reserving usurious interest, entitling him under the national bank act to plead as a bar to plaintiff's recovery all interest carried by the $22,000 of notes, unless, as was held by the referee, "the agreement of the defendant [although verbal] to pay interest on the overdue interest on the several notes made, preceding the making of the one in suit, was lawful, and when that was consummated by the signing of a new note it was a good consideration for the new indulgence thereby obtained." It is, however, said for plaintiff that prior to the execution of the note for $17,500, the plaintiff did not take, receive, reserve or charge on the Mason note interest at a greater rate than that allowed by the laws of the State of Missouri. That this being true, the question whether it compounded the interest on the Mason note is wholly beside the case. It is con-

ceded that "if this were a contract governed by this State statute, such might be the case, but it is urged that we are concerned now with the restrictions placed upon this bank's powers by the national bank act and that law contains no prohibition upon the agreement made by Donnell and the bank for the computation of this interest. The law in question made no contract for interest usurious unless it exceeded eight per cent per annum. The Mason note figured at eight per cent from December 29, 1893, to July 12, 1895, would equal $16,843.29, or $170.63 more than the amount claimed by the bank."

But we are not inclined to agree to this contention, as we think the position unsound. The legal rate of interest in this State, by whose laws in this respect the case is governed, is, in the absence of an agreement in writing to pay a higher rate, six per cent (sec. 3706, supra) and the fact that the definition of usury and the penalties imposed must be determined by the national bank act and not by the law of this State, as held in the case of Haseltine v. Central Bank of Springfield, 183 U. S. 132, is immaterial, for, whatever the unlawful interest charged by plaintiff may be called, there is no escape from the conclusion that when plaintiff computed the interest on the Mason note which only bore interest at seven per cent, with rests on December 29, 1894, June 29, 1895, and July 12, 1895, three rests in seven months, it was guilty of taking, receiving, reserving or charging a greater rate of interest than is allowed by the national banking act. And, therefore, the entire interest which the Mason note "carries with it" was forfeited, at the time it was computed into the note of $17,500. The bank had no right to charge any interest not allowed by the laws of Missouri. The banking act says so in plain words. The laws of Missouri did not permit the compounding of the interest on the Mason note oftener than once a year. Therefore, when the bank compounded the interest on the Mason note oftener than once a year, it did that which it was not allowed to do by the laws of Missouri, and

in so doing violated the national banking act and subjected itself to the penalties therein provided.

The record shows that the $15,000 note bore interest at seven per cent per annum and that notwithstanding this fact the interest was computed semiannually, and that on June 29, 1894, there was computed six months' interest due thereon amounting to $525 and that interest was computed on the interest then due, at the same rate, to December 29, 1894, amounting to $18.37. That on the day last named there was computed another six months' installment of interest amounting to $525, upon which there was computed interest at the same rate to June 29, 1895, amounting to $37.50, and at the time last named there was another installment of interest due on said note amounting to $525, all of which then amounting to $1,630.76, was added to the principal note of $15,000, the aggregate amount due on the day last named, $16,630.76, which, including interest at the same rate for thirteen days amounting to $42, overdraft for $596.74, and balance to credit on account, $230.50, amounting in the total to $17,500, was the amount of the new notes. There was no written agreement that interest upon interest or upon overdrafts was to bear any rate of interest at all, hence no higher rate than six per cent could have been charged, and anything in excess of that was usurious under section 3706.

Section 5197, supra, provides that "any association may take, receive and charge . . . interest at the rate allowed by the *laws of the State . . . where the bank is located, and no more,*" and we must look into its statutes to see what rate of interest may be charged, for it is only by statutory enactment that interest can in any event be charged and collected.

The national banking act restricts national banks in charging interest to the maximum amount allowed by the State, and provides that they shall charge "no more."

The referee in his conclusions of the law of the case said:

"That those charges taken by themselves were usurious but the overdraft in each instance formed a very small part of the consideration of the notes. That the law of forfeiture should be strictly construed, and when these parties by mutual agreement merged all these debts into one, and when the total effect of that merger fails to show *in toto* an illegal agreement under the usury act, the law has not been violated and that the grave result of imposing a penalty of forfeiting all interest on all the items that entered into that note should not be visited on the plaintiff."

With respect to the interest charged against defendant on overdue interest, he held that the agreement of the defendant to pay interest on the overdue interest on the several notes made preceding the making of the one in suit, was lawful, and when that was consummated by the signing of a new note it was a good consideration for the new indulgence thereby obtained.

But this position is not sound, for it is well settled that a debtor may, at or before the time of payment, direct its application, and that the creditor must apply it as directed, but if the debtor fail to make such direction when he might, the creditor may apply it as he pleases. It must, however, be applied to a debt that is due in preference to one that is not due. There is an exception, however, to these general rules, and that is, where the debt or part of it is usurious, the creditor can not in the absence of special directions so to do from the debtor, apply the payment to usurious interest or to any debt which the debtor is not bound to pay. Now, in the case at bar, the usurious interest was not paid but was carried along by way of renewal notes.

Defendant challenges the correctness of the conclusions of the referee from a legal standpoint, and insists that it is not sustained by authority. He contends that the referee was in error in holding that sections 5197 and 5198, U. S. Revised Statutes of 1878, are not to be construed *strictly* but liberally.

In National Bank v. Dearing, 91 U. S. 1. c. 35, in construing section 5198, it was said: "The thirtieth

section is remedial as well as penal, and is to be liber-
ally construed to effect the object which Congress had
in view in enacting it.'' [Ordway v. Central National
Bank of Baltimore, 47 Md. 217.]

In Brown's Executors v. National Bank, 3 U. S.
App. 7, it was said: ''The legislative intent, we think,
was to utterly destroy the interest-bearing capacity of
the instrument. The interdiction of a recovery of in-
terest by the transgressing bank is salutary, and full
effect should be given to it.''

And in Bletz v. National Bank, 87 Pa. St. 87, in
speaking of the term ''forfeiture,'' it was said: ''It
will be noticed that the word *forfeiture* is used, yet the
uniform practice has treated this not as pure penalty,
but as a defense which may be set up to the recovery
of interest. The word *forfeiture* is viewed simply as
conferring a right which may be asserted by the de-
fendant.''

It is admitted by the referee that the charges made
by the plaintiff of an usurious rate of interest on the
overdraft which formed an item of the $17,500 note,
taken by themselves, were usurious. But he says that
''when these parties, by mutual agreement, merged all
these debts into one, and when the total effect of that
merger fails to show *in toto* an illegal agreement .  .
.  the law has not been violated.'' In arriving at that
conclusion the referee must have proceeded upon the
theory that because the $17,500 note bore seven per
cent only, that purged the transaction of usury;
but it is well settled that interest included in a renewal
note and for which a separate note is executed does not
thereby cease to be interest within section 5197.

In Brown v. National Bank, 169 U. S. 416, it was
held that where a bank which violates section 5198,
supra, sues upon a note, the debtor may insist that
the entire interest, legal and usurious, included in the
note and agreed to be paid, but which has not been
actually paid, shall be either credited on the note, or
eliminated from it, and judgment given only for the
original debt, with interest at the legal rate, from the

commencement of the suit. . . . The forfeiture declared by the statute is not waived or avoided by giving a separate note for the interest, or by giving a renewal note in which is included the usurious interest. No matter how many renewals may have been made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied on, and the matter is thus brought to the attention of the court, lose the entire interest which the note bears or which has been agreed to be paid. By no other construction of the statute can effect be given to the clause forfeiting the entire interest, which the note, bill or other evidence of debt carries, or which was agreed to be paid, but which has not been actually paid.

"It is said that, within the meaning of the statute, interest is 'paid' when included in a renewal note, and when suit is brought upon the last note, calling for interest from its date, only the interest accruing on the apparent principal of that note is subject to forfeiture. We think the statute can not be so construed. If, within the meaning of the statute, interest is 'paid' simply by including it in a renewal note, it would follow that as soon as the usurious interest is included in a renewal note, the borrower or obligor could sue the lender or obligee and 'recover back . . . twice the amount of the interest thus paid,' when he had not, in fact, paid the debt nor any part of the interest as such. This can not be a sound interpretation of the statute. The words 'in case the greater rate of interest has been paid,' in section 5198, refer to interest actually paid, as distinguished from interest included in the note and only 'agreed to be paid.' If, for instance, one executes his note to a national bank for a named sum as evidence of a loan to him of that amount to be paid in one year at ten per cent interest, such a rate of interest being illegal, and if renewal notes are executed each year for five successive years, without any money being in fact paid by the borrower—each renewal note including past interest, legal and usurious—the sum included in

the last note, in excess of the sum originally loaned, would be interest which that note carried or which was agreed to be paid, and not, as to any part of it, interest paid."

To the same effect are Overholt v. National Bank, 82 Pa. St. 490; and Bank v. Hoagland, 7 Fed. 159.

The taint of usury in the first instance continued down the entire line. [Cake v. First National Bank, 86 Pa. St. 303.]

The note for $17,500 of July 12, 1895, being illegal in part, the question is, did it lose its interest-carrying power? In Danforth v. Bank, 48 Fed. 271, it was held that the forfeiture provided for by section 5198, supra, attaches to the instrument itself and in consequence adheres to it. And as it carries no interest, no interest thereon can be recovered. That the clause operates directly upon the bank and effects its power. That its power to collect interest under its statutory franchise is lost by the commission of the illegal act.

The contract entered into between plaintiff and defendant in conformity with the law of this State was valid, but all charges of interest against defendant in excess of that which is allowed by the laws of this State and in compounding interest upon usurious interest agreed to be paid by defendant was unlawful, and operated as a forfeiture by plaintiff to recover any interest on the note sued on.

But plaintiff says "between June, 1893, and April 30, 1896, defendant's account with plaintiff was frequently overdrawn, and that the bank from time to time made small charges against his account in the nature of penalties, as it understood it, for the overdraft. That the amount of these charges, together with the existing overdrafts, from time to time, more than equaled the money received by defendant from the bank at the time his loans were increased, and by a deposit of $1,750, February 18, 1895, and $35, October 1, 1895." And intimates that these matters might be equitably adjusted upon the principle that the equities are about equal. This, however, furnishes no justifi-

cation or excuse for the admission that the bank made charges against defendant on his overdrawn account in the nature of "penalties" which was simply another name for interest, and in excess of the rate allowed by law of this State.

On January 25, 1898, certain of the real property described in the deed of trust securing in part the payment of the $6,000 "collateral" note was sold and $5,500 was the net proceeds, and the defendant notified the plaintiff to apply the fund to the payment of the said collateral notes for $6,000, but defendant applied it instead to payment of interest on the notes for $22,000 and the balance on the principal of those notes.

The note being in part usurious, it must be applied upon the principal debt rather than the unlawful interest, and the burden of showing that a partial payment was made was upon the bank and, in the absence of any finding by the referee upon this question, it must be regarded as having been a general payment, and being such the bank was without authority to apply it or any part of it to forfeited interest, to a claim that had no legal existence.   [Danforth v. Bank, supra; Adams v. Mahnken, 41 N. J. Eq. 332; Green v. Taylor, 39 Pa. St. 361.]

It is said by counsel for plaintiff in his additional citation of authorities, that "if, by compounding, the limit prescribed by law is not exceeded, there is no violation of law, but if by compounding, the limit is exceeded, it is a violation of the law.   [Watson v. Mims, 56 Tex. 451.]   The form of the contract is immaterial; no device to evade the law will be upheld by the courts. [Mitchell v. Napier, 22 Tex. 120; Crozier v. Stephens, 2 Willson Civ. Cases (Tex. Ct. App.) section 802.]"

If this position is correct, and we think it is, it follows inevitably that the computation of interest upon interest at seven per cent, in the absence of a written agreement authorizing it, was in plain violation of the statute which under such circumstances only allow six per cent.

It is shown by the record that at the time the $2,500 note was executed defendant's account with the bank was overdrawn and had been for some months prior thereto, and plaintiff charged defendant one per cent per month on the overdrafts, which is admitted to be usury, and included it in that note.

It appears that while defendant was credited ostensibly for this note the statement of the account shows that he only received credit for a net balance after deducting the overdrafts with usurious interest thereon. It thus appears that usurious interest was taken and reserved out of this note, and that it was usurious at the time of its execution.

While we have considered these notes which entered into the general account of the parties, in order to show that each and every one of them constituting it since June 1893, was tainted with usury, we might as well have disposed of the case from a different standpoint, that is, that the long account is one continuous transaction, one running account, and that when any item of the account became tainted with usury it infected the entire transaction from that time. This view was taken of a similar case in Pickett v. Merchants' National Bank, 32 Ark. 346, in which it was said:

"True, there is evidence that the accounts were stated monthly, and a balance struck, but whether the usurious interest was or was not paid, is not shown; nor can we, upon a fair consideration of the transactions between the parties, admit these monthly estimates to be separate and distinct settlements, or indeed settlements at all, but, intended to show how the accounts stood between the parties. It was in fact a running account between the bank and its customer, Wormley, Joy & Co., commenced in 1866, and continued to 1868, the time when the account was closed by note, and in fact constituted but one transaction. . . . The usurious interest in this instance having been carried into the general account, and made part of the sum found due upon final settlement, taints the whole

contract with usury; the. fact that the account was closed by note amounts to nothing; it matters not whether the usury was charged and taken by any tacit assent of the firm by the bank in stating the monthly account, or by note substituted for the one first given.; the question is not how the contract was closed, or. renewed, but whether any part of the sum charged, and for which the note was executed, was for the use or forbearance of money at a greater rate of interest than allowed by law to be taken.   Such is clearly the rule as laid down by the elementary writers, and accords with numerous decisions, to some of which we will refer."

A similar view was taken in National Bank v. Lewis, 75 N. Y. 516, in which it was said:

"In the case at bar, the entire line or series of notes discounted, which are stated at length in the sixth defense, constitute one connected and continuous transaction; and, under such circumstances, the taint of usury affects the whole; and when the bank sues to recover upon the last of a series of renewal notes, the forfeiture of the entire interest follows as a necessary result, and credit must be given for all the interest which has been paid from the beginning on the loan."

Plaintiff asserts that the note finally given by defendant to the bank constituted a written agreement to pay a higher rate of interest than six per cent, but even if this be true it did not purge the note of the usurious interest which had not been paid and which went to make up the sum for which the note was executed.

"The forfeiture declared by the statute is not waived or avoided by giving a separate note in which is included the usurious interest.   No matter how many renewals may have been made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied on, and the matter is thus brought to the attention of the court, lose the entire interest which the note bears or which has been agreed to be paid.   By no other construction of the statute can effect be given to the clause forfeiting

Vol 172 mo—27.

the entire interest which the note, bill or other evidence of debt carries, or which was agreed to be paid, but which has not been actually paid." [Brown v. National Bank, supra.]

Plaintiff further contends that there is a *locus penitentiae* for it, and that any time before entry of final judgment it may consider the excessive interest paid on account of the loan, and so apply it and lessen the principal. That up to that time it may make its election. In support of this contention plaintiff relies chiefly upon Duncan v. First National Bank of Mount Pleasant, 1 Thompson National Bank Cases 360; approved in McBroom v. Scottish Investment Co., 153 U. S. 328; Stevens v. Lincoln, 7 Metcalf 528; Wright v. Laing, 3 B. & C. 169, and Saunders v. Lambert, 7 Gray 484.

The case first cited was an action under the laws of New Mexico to recover double the amount alleged to have been collected and received by the defendant in excess of the legal rate of interest. The statutes of that Territory make void a contract of loan providing for usurious interest *only as to the interest in excess of what the statute allows,* while section 5198 of the national banking act expressly provides "that the taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be *deemed a forfeiture* of the interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon."

Duncan v. First National Bank of Mt. Pleasant, supra, was an action under the national banking act to recover twice the amount of usurious interest paid upon loans from the bank, and it was held that where a national bank has taken usurious interest on a loan or discount, it may elect to apply the excess of interest on the principal at any time before the loan is paid in full, or before the judgment is entered for the full amount. But no allusion is made in that case to the provision of the national banking act above quoted,

which declares that the taking of usurious interest *forfeits* the entire interest.

Stevens v. Lincoln, 7 Metcalf 525, was also an action to recover back usurious interest and it was held that while the usurious interest is unpaid there remains the *locus penitentiae;* that the party may relinquish it, and recover the balance of his debt, the *contract not being rendered void by the statute.*

To the same effect is Sanders v. Lambert, 7 Gray 484.

It is apparent from a casual reading of these adjudications that they have no bearing upon the case in hand, nor has any case or authority been called to our attention where any such rule is announced in an action by a national bank to recover upon a note executed to it containing usurious interest *where the forfeiture clause of the statute* was relied upon as a defense and the matter brought to the attention of the court.  Any such ruling would be in the face of the express provisions of the statute, and thwart its very purposes; would be an inducement to national banks to charge usurious interest, and when compelled to sue upon its paper containing usury, and that defense is pleaded, to simply say to the debtor, we will credit the amount of the usurious interest paid by you on the principal of your debt, and thereby escape the penalty of the law.  Certainly no such consequences were intended by it.

Something has been said by counsel for plaintiff with respect to segregating what they admit to have been usurious transactions from those not tainted with usury, but from our view of the case as herein expressed the entire transaction, or practically so, is tainted with usury.

Our conclusion is that the judgment should be reversed with direction to the trial court to enter up judgment for plaintiff upon the following bases:

December 29, 1893 .............. $15,000 00
Principal of overdraft on July 12,
    1895 ........ ............    474 24
Net credit on bank acc't on that day.    230 50

| | | |
|---|---:|---:|
| Credit by note of October 1, 1895.. | 2,500 | 00 |
| Principal of overdraft April 29, 1896 ...................... | 874 | 81 |
| Credit on acc't that date ........ | 2 | 42 |
| Total amount loaned ............. | $19,081 | 97 |
| Credit by proceeds of col. Jan. 25, 1898 .................. | 5,500 | 00 |

All concur.