BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1913.

---

MARGARET McGRATH, Appellant, v. DANIEL
O'HARE, Executor, Respondent.

St. Louis Court of Appeals.   Submitted on Briefs April 8, 1913.
Opinion Filed May 6, 1913.

1. APPELLATE PRACTICE: Reference: Review of Referee's
Findings.   While the appellate court may review the findings
of fact of a referee, in a case of involuntary reference, and
approve or disapprove of them in whole or in part, it is not
bound to review them; and where the findings have been
scrutinized and approved by the trial court, such approval is
persuasive, on appeal.

2. REFERENCE: Trial Practice: Review of Referee's Findings.
The findings of fact of a referee, in a case of involuntary refer-
ence, are always subject to review by the trial court.

3. PARENT AND CHILD: Action by Child for Money Loaned:
Sufficiency of Evidence.   In an action by a daughter against
her mother's estate to recover various sums of money which
she had contributed to the general family support, evidence
held to sustain a finding that there was no legal obligation on
the part of the mother's estate to repay the contributions.

4. STATUTE OF LIMITATIONS: Five-Year Statute: Account.
Plaintiff, who lived with her mother, gave the latter her weekly
wages, and was supplied by her mother with food, lodging

175 Mo. App.]              (9)

and clothing. More than five years after the last weekly contribution was made, she brought an action against her mother's estate to recover the amount of these contributions. In the meantime, however, and within five years before the action was commenced, she had given her mother small sums of money on several occasions. *Held*, that the evidence sustained a finding that the small sums given to the mother were gifts; *held further*, that the weekly wages paid over by plaintiff to her mother and the other small sums given to her did not constitute an account, in the sense of the law; and hence it is *held* that plaintiff's action was barred by the five-year Statute of Limitations (Sec. 1889, R. S. 1909).

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Louis A. Steber* for appellant.

(1) It does not destroy the continuity of an account, because a break occurs between the items. Its continuance and running character would turn on the intention of the parties. Vogel v. Kennedy, 127 Mo. App. 228. (2) The rule is when the account is a running and continuous one and it is fairly inferrable from the conduct of the parties while the account is accruing that the whole may be regarded as one account, then none of the items are barred unless all are. Moore v. Renick, 95 Mo. App. 202; Lancieri v. Sprinkling Co., 95 Mo. App. 319; Chadwick v. Chadwick, 115 Mo. 581; Ring v. Jamison, 66 Mo. 424; Id., 2 Mo. App. 584; Brylan v. St. Bt. Victory, 40 Mo. 244; Sideway v. Land & Live Stock Co., 187 Mo. 649; Gibson & Bro. v. Jenkins, 97 Mo. App. 27; Vogel v. Kennedy, 127 Mo. App. 229; Roberts v. Neale, 134 Mo. App. 612; Somerville v. Glass Co., 144 Mo. App. 463. (3) The trial court and referee found that the few later items were gifts. That finding has no evidence on which it is based. It is a mere guess. "The burden is cast upon the donee to show in the clearest and most satisfactory manner that the gift in question is one which is in every

McGrath v. O'Hare.

particular worthy of receiving the sanction of a court."
Miller v. Simonds, 72 Mo. 669; Jones v. Falls, 101 Mo.
App. 536.

*William Hilkerbaumer* for respondent.

(1) The finding of the referee has the effect of a
special verdict, and as it was approved by the trial
court, must not be disturbed unless there is no evidence
to support it. Dempsey v. Schawacker, 140 Mo. 680;
Feeney v. Chapman, 89 Mo. App. 371; Men's Society v.
Fitzwilliams, 12 Mo. App. 445. (2) The plaintiff
failed to prove that the money claimed to have been
paid to decedent, whether wages or otherwise, was
paid to her under such circumstances as to create an
obligation to repay the same. Gerding v. Walter, 29
Mo. 426. There was a total failure of proof as to the
item of $2.50, dated between December 1 and December
31, 1905. (3) Because of the relation of parent and
child existing between them the presumption is that
the payments by plaintiff of her wages to her mother
and the support and clothing furnished by the latter to
plaintiff, did not create the relation of debtor and
creditor between them. Bircher v. Boemler, 204 Mo.
554; Fry v. Fry, 119 Mo. App. 476. (4) The last four
items of the alleged account are shown by plaintiff's
own pleadings and proof to be so disconnected with the
earlier part as to destroy its continuity, and hence they
do not draw with them the whole account, and all of the
account relating to the payment of plaintiff's wages to
her mother is barred by the five-year Statute of Limita-
tion. Rev. Statutes 1909, sec. 1893; Chadwick v. Chad-
wick, 115 Mo. 581; Sidway v. Land Co., 187 Mo. 649;
Loeffel v. Hoss, 11 Mo. App. 133; Chapman v. Hogg,
135 Mo. App. 654; Macke v. Davis, 61 Mo. App. 524;
Vogel v. Kennedy, 127 Mo. App. 228. (5) The first of
the four items dated in 1900 is also shown by the plead-
ings and proof to be entirely separate and distinct
from the remaining three, and is clearly no part of a

running account, and is therefore barred by the five-year statute. See citations under 4.

REYNOLDS, P. J.—The original petition in this cause was filed on the 17th of January, 1908, and demanded judgment on an account made up of many items, beginning November 18, 1893, aggregating $1500. Judgment was prayed in the original petition for this amount and interest, the latter placed at $1000, a total of $2500. On the 4th February, 1908, the death of the defendant was suggested and in October of that year the cause was revived against her executor, and on the 7th of May, 1909, an amended petition was filed in which it is alleged that beginning with November, 1893, and until the month of October, 1899, plaintiff had deposited, loaned and turned over to her mother all of her weekly wages each week, from which was to be deducted $3.60 a week for board and lodging, showing weekly balances and interest to January 16, 1908, amounting to a total of $2538.40. It is further alleged in the amended petition that between January 1, 1900, and January 16, 1908, on dates not specified with great particularity, plaintiff had advanced or loaned to her mother, or paid out on account of her mother, various small sums, $3.75 at one time, $4 at another time, $2.50 at another time, and $2.03 at another time, within the period last stated, and judgment is asked for these amounts and interest thereon from the dates of the payments. It is further in evidence, but not in the petition, that in 1899 plaintiff gave her mother ten dollars for a wrap.

The answer to the amended petition, denying every allegation, avers that whatever sums of money plaintiff paid to her mother, except the items after October 1, 1899, the last charge in the account for wages alleged to have been turned over to her mother, were voluntary contributions for the support and maintenance of her mother's family, of which plaintiff was a member, and

in return for which plaintiff received board, lodging, clothing and expense money, and that the payment of the money and the furnishing of the board, lodging, clothing and expense money, was treated by the plaintiff and her mother as a discharge by them respectively of the reciprocal duties arising from the relation of parent and child, members of the same family, without regard to whether the one exceeded the other in value. The answer further pleads the Statute of Limitations as a bar.

· The cause being at issue was referred to a referee with directions to try all the issues therein and report his decision to the court. The referee proceeded to hear the testimony in the cause, no witnesses being produced by defendant. At the conclusion of the hearing the referee submitted his report which in substance is as follows:

That plaintiff, then Miss Margaret Talty, now Mrs. Margaret McGrath, lived with her mother, Mrs. Bridget Talty, and worked for the St. Louis Paper Box Company for sometime before she became of age, which occurred in November, 1893, and thereafter until September 30, 1899, with the possible exception of two or three weeks. Plaintiff kept no account of her payments to her mother, so far as appears by the evidence in the case, nor did her mother. The evidence of plaintiff touching the payments by her to her mother and the items and dates of them, consisted in the production of the pay rolls and books of her employer. These showed that her earnings varied from $4.50 to $11.65, on one occasion reaching as high as twelve dollars, but the greater part of the time varying between six dollars and ten dollars. These wages were handed to the plaintiff in a sealed envelope which as a rule she opened when received, counted the contents and then on reaching home handed them over to her mother. This was a general custom but was not always followed. If there was loose change in the envelope plain-

tiff occasionally took it out.  At other times she would
make small purchases for herself out of the money be-
fore handing the envelope to her mother, but she took
home the greater portion of her wages to her mother,
who on some occasions said in the presence of others
that she would save the money for plaintiff.  She also
said to some of those present that she deducted three
dollars a week for plaintiff's board, giving her ten
cents a day for car fare and also would give her spend-
ing money.  "How much of the wages received by
plaintiff," reports the referee, "she thus turned over
to her mother the evidence does not disclose, nor how
much the mother expended out of such wages for cloth-
ing for plaintiff, or how much she gave her for spend-
ing money, does not appear.  Beginning with October,
1899, plaintiff paid her mother three dollars a week for
board and kept the remainder of her earnings for her-
self.  During the entire time the plaintiff turned over
either her entire wages or a part of her wages to her
mother, she lived with her mother, who had no other in-
come but the plaintiff's wages, and who supplied the
food, lodging and clothing and did her washing and
ironing.  Plaintiff was married in 1900, and for a short
time thereafter lived with her husband in the house be-
longing to and next door to her mother.  In May, 1900,
plaintiff gave her mother two dollars.  Nothing was
said by either party what the money was for, or
whether it was to be returned.  . . .  In the spring
of 1900, plaintiff gave her mother $3.75, which was to
pay for a carriage at the funeral of a friend."  At the
christening of plaintiff's baby in 1903, plaintiff gave
her mother two dollars and in the fall of 1903 she gave
her five dollars.  The referee found as to all of these
that they were gifts and that whatever money plaintiff
may have given to her mother between November, 1893,
and the 1st of October, 1899, were voluntary gifts made
by plaintiff to her mother during which time the
mother provided for plaintiff's needs.  No demand was

ever made by plaintiff upon her mother to return any part of the money so given nor was any promise ever made by the mother to return any of these moneys. The referee further found that in October, 1907, plaintiff had paid to a physician two dollars for making an examination of her mother, the examination made at the request of the daughter, plaintiff.

As his conclusion of law on the above facts the referee found:

"First. That there was no legal duty on the part of Mrs. Bridget Talty to repay or return to plaintiff any part of the money given by plaintiff to Mrs. Bridget Talty, and no legal obligation against the estate of Bridget Talty for repayment of such moneys, or any part thereof.

"Second. That if turning over by plaintiff to her mother of plaintiff's earnings, or a portion of such earnings, from November 18, 1893, to September 30, 1899, constituted an account as between plaintiff and her mother, then such account was closed on September 30, 1899, and was barred by the Statute of Limitations at the time this suit was filed in January, 1908.

"Third. The amounts given by plaintiff to her mother in 1900, 1903, 1905 and 1907 have no connection with each other or with any of the amounts given by plaintiff to her mother between November, 1893, and October, 1899, and form no part of the account of moneys given by plaintiff to her mother between said last mentioned dates."

The referee thereupon recommended that judgment be rendered in favor of defendant.

On the coming in of this report exceptions were duly filled to it by the plaintiff and on consideration were overruled by the court and judgment rendered in accordance with the report of the referee in favor of the defendant. Plaintiff, filing a motion for a new trial, which was overruled, duly perfected her appeal to this

court, having duly saved exceptions to all the adverse rulings and actions of the trial court.

This was an involuntary reference, involving the examination of a long account, and while it is true that the appellate court, "may, if so inclined, review the findings of fact by the referee in cases of this character, and approve or disapprove it in whole or in part, is well settled, but it does not follow that it will do so." [Citizens' Nat'l Bank of Kansas City v. Donnell, 172 Mo. 384, l. c. 402, 72 S. W. 925; Sonnenfeld v. Rosenthal, 247 Mo. 238, 152 S. W. 321.] The report of the referee, however, is always subject to review by the circuit court, which court has not only the power but the duty to review the finding of facts by the referee. [Citizens' Nat'l Bank v. Donnell, supra.] When it appears as here, that the report has been subject to the scrutiny of the trial judge and approved, his action is always very persuasive. We are satisfied from the examination we have made of the testimony that there is substantial evidence to sustain the report of the referee, and as that report was opened up to the circuit court by exceptions, those exceptions considered by the judge of that court and overruled, we see no occasion to disturb that finding.

Counsel for the respective parties in their briefs have stated the various propositions of law upon which they rely, as going to the Statute of Limitations and the situation of the parties to each other. Without taking them up in detail, it is sufficient to say that the evidence satisfies us that the finding of the referee is correct as to the character of the transactions between the parties. We also agree with his finding as to the running of the Statute of limitations and that all inquiry is closed as to all of the account down to the 1st of October, 1899, the action having been brought, more than five years after that date. It was not revived or continued as an account by the payments in subsequent years and within the statutory period, for we think it

clear from the evidence the transactions after November, 1899, had no connection with those preceding that date. This case falls on its facts on this point, within Chapman v. Hogg, 135 Mo. App. 654, 116 S. W. 492, and cases there cited. It is also evident that neither plaintiff nor her mother ever kept any account of any kind between themselves or one for the other. Plaintiff, in an effort to prove her case as to the payments to her mother, prior to October, 1899, both as to amounts and dates, was obliged to rely entirely upon the books of her former employer; she had these books showing the dates upon which payments had been made by that employer to her through the course of her employment and the amounts they had paid her brought into court, and outside of the account between her and her employer, she had no evidence at all as to these facts. This was not any account, in the sense of the law, as between herself and her mother; certainly was no mutual account between the parties. There was evidence that on a few occasions the mother had said something about putting what money her daughter had given her in property and that she had saved it up in this way, but this evidence was very loose and inconclusive and we cannot treat it as in any sense a recognition of the relation of debtor and creditor or even of a trust relation between the mother and the daughter. The testimony as to the small amounts paid over from time to time by the daughter to the mother, after October, 1899, was before the referee; we have examined it sufficiently to concur with him in the view that these were gifts and not intended at the time to be a charge against the mother by the daughter.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.