W. J. RILEY, RESPONDENT, v. CITIZENS BANK OF WINDSOR, APPELLANT.

Kansas City Court of Appeals.  May 25, 1925.

1.—**Appeal and Error—In Equity Cases, Duty of Appellate Court to Review Evidence, Findings of Fact, Conclusions of Law and Render Judgment in Conformity Therewith.** Appellate court not only has the right, but it is its duty in equity cases, to review the evidence, findings of fact, conclusions of law and render such judgment as, in its opinion, shall conform to the law and evidence.

2.—**Reference—Findings of Referee are In Nature of a Special Verdict.** Findings of a referee are in the nature of a special verdict.

3.—**Banks and Banking—Bank Officer Cannot Act for Bank and Customer in Transaction in Which He is Personally Interested, and Where He Does, His Acts Are Not Binding on Bank Unless Expressly Ratified.** Officer of bank cannot act for both bank and customer in a transaction in which he is personally interested, and should he do so, his acts in that respect are not binding on bank unless expressly ratified.

4.—**Same—Evidence Held to Sustain Finding of Referee That Cashier Was Not Personally Interested in Transaction Between Bank and Customer.** Finding of referee that cashier of bank was not personally interested in customer's land deal, so as to be entitled to division of profits appropriated by him from proceeds of sale in hands of bank, **held** sustained by the evidence.

5.—**Appeal and Error—In Reaching Decision on Appeal, Findings of Referee Are Entitled to Much Weight.** Upon appeal findings of referee are entitled to much weight.

6.—**Same—Where Verdict for Right Party, Appellate Court Cannot Conclude That Trial Court Was Influenced by Incorrect Statement in Referee's Report.** Where verdict was for right party, appellate court cannot conclude that trial court was influenced to defendant's prejudice by incorrect statement in referee's report.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 890, n. 92, 94; p. 897, n. 81; p. 1055, n. 56; p. 1056, n. 79. Banks and Banking, 7CJ, p. 541, n. 54; p. 757, n. 53.

Appeal from the Circuit Court of Pettis County.—Hon. Dimmitt Hoffman, Judge.

Affirmed.

*D. W. Peters* and *J. W. Palmer* for respondent.

*Ross E. Feaster* and *James A. Parks* for appellant.

ARNOLD, J.—This is an action by a bank depositor seeking an accounting as to all transactions between the parties covering a period from 1907 to 1914. Defendant is a banking corporation doing business at Windsor in Henry county, Missouri, and plaintiff is a farmer then living in Benton county and from 1907 to 1914, was a depositor and customer of said bank.

The record discloses that plaintiff became a customer of defendant bank in the latter part of the year 1906, and continued business relations with the bank until the early part of 1914; during this period he carried a checking account, borrowed money and executed notes therefor, and transacted his general banking business with said bank. About March 26, 1914, plaintiff closed his account and has transacted no business with defendant since that time. After the account was closed plaintiff became dissatisfied and claimed that he had made deposits and executed notes for which he received no credit. Complaint was made to the bank's officers and a statement demanded. During the year 1915 a statement was furnished by the bank which was not satisfactory to plaintiff and suit was instituted in Henry county demanding an accounting. A change of venue was taken to Vernon county where the suit was dismissed by reason of plaintiff's default. Later the cause was revived in the circuit court of Henry county where an amended petition was filed alleging some thirty to thirty-five irregularities and errors in the banking transactions and seeking judgment for $5091.78 thereon. Upon appli-

cation of plaintiff a change of venue was taken to the circuit court of Pettis county, where it was tried.

The trial of the facts requiring the examination of long, intricate and involved accounts, the court, under the provisions of section 1426, Revised Statutes 1919, appointed the Hon. Paul Barnett of Sedalia, Mo., referee to take the evidence and render his findings of law and fact. The evidence taken by the referee afterwards was transcribed and filed with the court, together with findings of law and fact and recommendations by the referee, all being shown in the abstract of the record. Upon this report and recommendation the court found that not all of the alleged irregularities charged in the petition were well founded, and from that finding no appeal was taken. There was however a real estate transaction between plaintiff and defendant, the latter being represented by A. L. Duff who was cashier of the bank at the time. In this transaction there was a profit of some $2100, all but $500 of which said Duff applied on plaintiff's indebtedness to the bank. The $500 was appropriated by Duff to his own use, upon the claim that it was due him as his share of the profits of the sale of said land.

As is required of us in cases of this character, we have read the entire record in the case. We find that much of the evidence presented has reference to contested items of plaintiff's account with the bank, relative to which the court's holding was for defendant, and from which ruling no appeal was taken. The facts relative to the land deal, as shown by the record, are as follows:

In the month of February, 1912, plaintiff purchased from one John K. Swisher a farm consisting of 119 acres in Benton county, Mo., for which he paid the sum of $9000. He sought to borrow the money from defendant bank to pay the purchase price. Plaintiff had already arranged with a firm in Sedalia, Mo., for a part of the purchase money, to-wit, $4200 to be secured by a first lien upon the land. He borrowed the rest to make up the $9000 of the defendant bank, through its cashier, Mr. Duff, who took two notes signed by plaintiff and his wife for $2000 and $2840.84, respectively, dated March 1, 1912, but actually executed on April 27, 1912, and payable to defendant bank. Before the notes were signed, the cashier required plaintiff to sign an agreement as follows:

"March 19, 1912

"This contract & agreement made and entered into by and between W. J. Riley, party of the first part and A. L. Duff, party of the second part,

"WITNESSETH: That the said party of the first part in consideration of $1 and other valuable considerations, does hereby agree to sell and deed to the said A. L. Duff, or to one whom he may designate, the following described land, to-wit:

"The E½ of the NW¼ of Sec. 23 and the SE¼ of the SW¼ of Sec. 14 all in Twp. 43 Rge. 23 in Benton County, Missouri. Deeds to be made as soon as said W. J. Riley and wife can convenientlv come to town.

　　　　　　　　　　　"(Signed)　　W. J. Riley
　　　　　　　　　　　　　　　　"A. L. Duff."

On March 23d plaintiff and his wife came to Windsor and executed a deed to one Ambro Henry, a nephew of Duff, the cashier. On April 26, following, Duff took a deed of trust to the bank which secured the payment of the note for $2840.84, Mr. Duff signing the $2000 as security for plaintiff. The title remained in this condition until 1914, plaintiff lived on the farm from the date of its purchase, paid the taxes and insurance and received the profits of the farm.

In 1914, the cashier took a conveyance of the land from Ambro Henry and then sold it to one Greenaman for $11,100, being $2100 profit over the price paid by plaintiff. When this sale was made by Duff, the purchaser assumed the first deed of trust of $4200, and the remainder of the purchase price was received by Mr. Duff. He applied this to the payment of the principal and interest on the notes for $2840.84 and $2000, and then applied part of the money to the payment of another of plaintiff's notes to the bank; and another part he applied to the payment of plaintiff's notes to the bank upon which one Sam Swisher was security. The last-named note by said payment was reduced from $1365 to $614.47. Besides the payments credited as stated, the cashier appropriated the remaining $500 to his own personal use.

In explanation of this circumstance, the cashier testified that the desired loan of $4800 was too large and the cashier could not make it for the bank; that in his personal capacity he agreed with plaintiff that he would sign the notes; pursuant to such agreement he did sign the $2000 note, payable to the bank as security; and took a deed of trust on the land to secure the note of $2840.84, in which F. C. Livingston was named as trustee, and the defendant bank as *cestui que trust;* that after having signed the one note as surety in his personal capacity and having secured the other by the deed of trust in his capacity of cashier of the bank, he considered the loan safe and advanced the bank's money thereon. For his good offices in personally signing the one note which he called "financing the transaction," he testified it was agreed that he should receive fifty per cent of the profit arising from the sale of the farm; that the profit was $2100, and that while he was entitled to $1050, he appropriated only $500 to his own use. He testified that in order to take up some notes on which plaintiff was obligated to the bank, or to reduce them to a figure where the bank could consistently carry them, he had given up part of his

share of the profit on the sale of the land. On one of such notes one Sam Swisher was surety and this note had not been fully paid. This note was taken up and he considered this a gift to Mr. Swisher.

His testimony further is to the effect that the contract between him and plaintiff as to the division of the profits was not in writing, and when pressed for an explanation as to this rather unusual situation, he stated that he "didn't think it was necessary—overlooked it." He stated that he was sure the agreement was entered into in the presence of Sam Swisher who was relieved as surety on a note by the application of part of the profits on the lands in payment of the same. Mr. Swisher was not produced as a witness to corroborate this statement.

Plaintiff positively denied such agreement and stated there was never at any time, any mention made between the parties to the effect that Duff was to receive any part of the profits on the sale of the land. Plaintiff's theory was that the warranty deed to the land given at the direction of the cashier, was given to secure the money loaned by the bank to buy the farm. There are circumstances in evidence tending to support this view, among them the fact that plaintiff moved onto the farm, occupied it for two years, invested largely in farm machinery and made valuable improvements at his own expense. The warranty deed was given at the time the money was borrowed; it was made to a party who paid no consideration for it, and pursuant to the written contract to make conveyance to such person as the cashier might name. It was admitted that said warranty deed was not such unconditional conveyance as it purported to be; it was treated by the cashier of defendant bank as a mortgage, for when the farm was sold he applied the proceeds to the payment of plaintiff's indebtedness to the bank, without consulting plaintiff and without recourse to the deed of trust. Moreover the record discloses that the entire transaction consisted of a contract, four notes, a deed of trust and three warranty deeds, all of which, together with the admissions of record, show that no money was paid to plaintiff for his deed, and that there was no consideration therefor excepting the borrowed money. From these circumstances the only reasonable conclusion is that the written evidence does not reflect the true nature of the whole transaction.

Another inevitable conclusion is present in the fact that while the cashier testified that he took the deed to protect himself individually on the $2000 note he signed with plaintiff, yet the record clearly discloses that he took it to cover the entire loan. The fact is that the deed of trust was not executed until after the execution of the warranty deed. The conclusion is fully warranted that the taking of the deed of trust was an afterthought.

One of the directors of the bank corroborated the cashier in one respect, to-wit: The cashier swore that he consulted said director about making the loan, and that the director said it would be all right if he (Duff) signed the notes. The record discloses that he only signed one. Plaintiff testified that although the cashier signed one of the notes he was not asked to do so. From these facts and circumstances it must be concluded that the deed by plaintiff and wife was given to secure the two notes of March 1, 1912, and was in fact, a mortgage and that the cashier knew this to be a fact. Plaintiff and his wife both swore that they thought they were signing a mortgage.

From the record the following facts are outstanding: The deed was given to secure a debt due the bank; it was given to a "dummy" at the direction of the cashier, the managing officer of defendant bank; the deed was used as a means by which indebtedness due the bank was collected; the land was sold and transferred by virtue of the deed, and the money came into possession of the bank; with the exception of $500 it was used to extinguish plaintiff's indebtedness to the bank, and also other notes which plaintiff owed.

After application of the funds was so made, the cashier appropriated the $500 in question to his own use. This, it must be held, he had no right to do. The money came into the hands of the bank, and, legally, it was bound to account to plaintiff for all of it. However, in so far as the money was applied to plaintiff's admitted indebtedness to the bank is concerned, it is not apparent to the court any harm resulted; but it is clear the bank may not avoid liability for the $500 not so applied, but which was appropriated by the cashier to his own use.

The recommendation of the referee was as follows:

"The refereee recommends that plaintiff recover of defendant the sum of $500 together with interest thereon at the rate of six per cent per annum from March 26, 1914, together with $10.60 with interest thereon at the rate of six per cent per annum from the time of the filing of the amended petition together with the cost of the suit."

The court sustained certain of defendant's exceptions to the referee's report and overruled as to others; disapproved the findings of fact and conclusions of law of the referee to the effect that plaintiff deposited a check for $5 dated January 1, 1913, drawn by A. N. Ferguson, payable to plaintiff's order, and did not receive credit therefor; and also disapproved the findings of fact of the referee that plaintiff had been overcharged to the amount of $5.60 in interest paid on notes to defendant bank. Except as stated, the court approved the findings of fact and conclusions of law of the referee, and thereupon entered of record the following judgment:

"It is further considered and adjudged by the court that the plaintiff have and recover of the defendant the sum of $500 together

with interest thereon at the rate of six per cent per annum from March 26, 1914, being a total of $797.67, and that plaintiff have and recover of the defendant the costs of this suit and that execution issue therefor.''

Motions for new trial and in arrest were unavailing and defendant appeals.

Under its points and authorities, as we view them, defendant presents only elementary principles of law about which there is no dispute. There can be no question but that this court not only has the right, but it is its duty in equity cases, to review the evidence, findings of fact and conclusions of law of the referee and the trial court; and to render such judgment as, in its opinion, shall conform to the law and the evidence. [Utley v. Hill, 155 Mo. 232; Williams v. Railway, 153 Mo. 487; McGrath v. O'Hare, 175 Mo. App. 9; Graham Paper Co. v. Nat'l Newspapers Association, 193 S. W. 1003; Sec. 1444, R. S. 1919.] It is also undisputed that the findings of a referee are in the nature of a special verdict; and neither is it disputed that an officer of a bank cannot act for both parties in a transaction in which he is personally interested, and should he do so, his acts in that respect are not binding on the bank unless expressly ratified.

We take it, therefore, that there is no dispute between the parties as to the law applicable to the facts in this case. The only question for our consideration, raised by defendant's brief, is one of fact, to-wit, which version of the land transaction is correct? As stated above, we have carefully reviewed all the testimony in the case, most of which is not applicable to the land transaction, and while we are not bound by the findings of the referee, it is the rule that his report is entitled to much weight in reaching our decision in the matter because the referee saw the witnesses, heard their testimony and observed their general demeanor on the stand, and was thereby better able to weigh their testimony than are we. But aside from these considerations, we must conclude from the record that the findings of fact and conclusions of law of the referee, in good conscience, could have been none other than they are.

There is one other point that demands notice. Defendant contends that the court was influenced in its judgment and decree by the statement in the referee's report to the effect that Mr. Swisher, from whom plaintiff bought the farm, was the same person who had endorsed plaintiff's note, or notes, and although he was present at the trial, he did not testify. It is pointed out that Sam Swisher who was the indorser of the notes and present at the trial, and not John K. Swisher from whom the farm was purchased, and in whose presence it was claimed the contract for the division of the profits was made.

It is found from the record that defendant is correct in this respect, but we cannot conclude therefrom that the court was influenced

to defendant's prejudice. The fact is that John K. Swisher was not placed upon the stand to corroborate the cashier. In this circumstance, we may not convict the court of error, in holding as it did on this point. We think, beyond question, that the verdict is for the right party, and there is found no reversible error of record.

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.