**C. I. T. CORPORATION, a New York Corporation, Plaintiff-Appellee,**

v.

**M/V MISS EILEEN, her engines, tackle, appurtenances, equipment, etc., Defendants,**

**Walter Alan Gordon, Defendant-Appellant,**

**Chester L. Alexander, d/b/a Alexander Marine Salvage, Intervenor.**

No. 30752.

United States Court of Appeals, Fifth Circuit.

June 1, 1971.

W. F. Parker, Miami, Fla., for Walter A. Gordon.

Frank J. Marston, William C. Norwood, Fowler, White, Humkey, Burnett, Hurley & Banick, P.A., Miami, Fla., for C.I.T. Corp.

Before WISDOM, Circuit Judge, DAVIS*, Judge, and GOLDBERG, Circuit Judge.

* U. S. Court of Claims, Washington, D.C., sitting by designation.

**762**

WISDOM, Circuit Judge:

Walter Alan Gordon appeals from a judgment of the district court denying his motion to set aside a default judgment rendered in favor of C.I.T. Corporation. We vacate and remand for further proceedings consistent with this opinion.

In June 1968 Gordon, a resident of Florida, executed a promissory note to C.I.T., a New York corporation, in the amount of $43,680. To secure payment of the note, Gordon also gave C.I.T. a preferred ship's mortgage on two vessels that he owned, the S/V "Miss Eileen" and the S/V "Sassy Gal", whose home port was Tampa, Florida. The note provided for payment in stated monthly installments over a period of 36 months. In the event of nonpayment of any installment, C.I.T. had the option of accelerating the maturity dates of the remaining installments and demanding payment in full. Within a year Gordon, by paying the monthly installments, had reduced the amount of the debt to below $30,000. On June 1, 1969, however, he stopped paying the monthly installments, and in January 1970 C.I.T. brought this action to foreclose on its preferred ship's mortgage. Electing to accelerate the payments due, C.I.T. demanded payment in the amount of $31,556.20, which amount represented the balance of the note and the interest that had accrued since Gordon's default.

When Gordon failed to respond to C.I.T.'s complaint, the district court in July 1970 entered a default judgment in favor of C.I.T. in the amount of $33,272.77. That amount included interest on the principal amount due through June 30, 1970. C.I.T. then moved to execute its judgment. At a public auction C.I.T., the highest bidder, purchased the S/V "Miss Eileen" for $11,000.

Before the court had confirmed the sale of the S/V "Miss Eileen", Gordon appeared in the suit for the first time and filed a motion to set aside the default judgment rendered in favor of C.I.T. Gordon alleged that the judgment was void because C.I.T. had charged a rate of interest in excess of that allowed by Florida law. Under Florida law a lender forfeits both the principal and interest if he charges interest in excess of 25 percent per annum. See Fla.Stat. Ann. § 687.07; American Acceptance Corp. v. Schoenthaler, 5 Cir. 1968, 391 F.2d 64. According to Gordon's calculation, supported by an affidavit of a certified accountant, the rate of interest claimed by C.I.T. and allowed by the court was 26.4 percent. C.I.T. opposed the motion on two grounds: (1) that Gordon was estopped from raising the issue of usury because he knowingly accepted a default judgment in the case, and (2) that the validity of the mortgage was governed by federal law, not state law, and that 46 U.S.C. § 926(d) allows a preferred ship's mortgage to bear whatever rate of interest the parties may agree upon.

In September 1970 the district court entered orders denying Gordon's motion to set aside the judgment and confirming the sale of the S/V "Miss Eileen" to C.I.T., but the court did not specify the grounds on which it denied Gordon's motion. Gordon appeals from the court's denial of his motion to set aside the judgment.

On appeal Gordon still contends that Florida law controls and that Florida law requires the court to declare the balance of the note due and the accrued interest forfeited because of C.I.T.'s usurious interest charges. Gordon also argues—now for the first time—that even if federal law governs, the judgment is still void. The crux of this contention lies in Gordon's view that the parties specifically agreed—as they were entitled to do under 46 U.S.C. § 926(d) —to interest at the highest lawful contract rate in the state of the vessel's home port, that is, Florida. Thus, giving effect to federal law and the stipulation of the parties, Gordon is still entitled to have the judgment set aside.

C.I.T. continues to argue that Gordon is estopped from seeking relief on the ground of usury and that the parties were free under controlling federal law to agree upon whatever interest rate they wished. Nevertheless, C.I.T. has also moved this Court for leave to file an affidavit which purports to show that because of an accounting error the amount of interest included in the default judgment was overstated. That is, part of the amount originally thought to be in payment of interest was actually in repayment of principal. The rate of interest actually charged, they now claim, was only 12.5 percent.

In rebuttal Gordon argues, ironically enough, that C.I.T.'s attempt to dispute the rate of interest comes too late: having failed to present its contention to the district court, C.I.T. is now estopped from presenting it to this Court. Gordon also argues that even if the rate of interest charged was only 12.5 percent, that rate is still usurious, although it subjects the lender to a forfeiture of only double the amount of interest charged. *See* Fla.Stat.Ann. § 687.04.

These contentions raise important issues of both fact and law. They should have been presented first to the district court, not to us on appeal. We are not a court of original jurisdiction. Our function is to review the findings of fact and conclusions of law of the district court. In view of the lack of such findings in this case we have no choice but to remand the case to the district court.

On remand the district court should first determine what rate of interest C.I.T. in fact charged and collected in this case. Then the court should decide whether the default judgment rendered in favor of C.I.T. should be set aside on the ground that under Florida law the interest rate that C.I.T. in fact charged is usurious. It is of course true that federal law, specifically the Ship Mortgages Act of 1920, 46 U.S.C. § 911 et seq., governs the construction and validity of the note and mortgage.

Nevertheless, to state merely that federal law controls does not end the matter. The court must then determine whether the parties, as they were entitled to do under 46 U.S.C. § 926(d), incorporated by reference in the note and mortgage Florida legal interest rates. In that connection the court should decide whether by reference to the maximum interest rate allowed by Florida law the parties merely sought a convenient method of setting the rate or whether they actually intended to incorporate in the note and mortgage the forfeiture and penalty provisions of the Florida usury laws. If the parties intended to incorporate Florida usury law into the note and mortgage, then the court should enter judgment in accordance with that law.

Of course it may well turn out that by reference to the maximum interest rate allowed by Florida law the parties merely intended to fix the rate of interest and not provide penalties for charges in excess of that rate. In that case Gordon's argument that the Florida usury statutes entitle him to have the judgment set aside would fail. Even if Gordon's motion to set aside the judgment fails, however, the court should re-examine its award of interest in this case and be sure that it has not allowed interest in excess of that specifically agreed to by the parties in the note and mortgage.

Therefore, we vacate the judgment of the district court denying Gordon's motion to set aside the default judgment entered in favor of C.I.T. and remand the case to the district court for further proceedings consistent with this opinion.