FOURCHON, INC., Plaintiff-Appellant,

v.

LOUISIANA NATIONAL LEASING CORPORATION, et al., Defendants-Appellees.

No. 82–3678.

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1984.

Robert N. Habans, Jr., David S. Willenzik, New Orleans, La., for plaintiff-appellant.

David Vaughn, John Dale Powers, Baton Rouge, La., for defendants-appellees.

Before TATE and GARWOOD, Circuit Judges, and SHAW *, District Judge.

GARWOOD, Circuit Judge:

Appellant, Fourchon, Inc. ("Fourchon"), a Louisiana corporation, invoking the district court's federal question jurisdiction under 28 U.S.C. § 1331, brought this suit against appellees, Louisiana National Bank, a national bank, and its wholly owned subsidiary, Louisiana National Leasing Corporation ("LNB" and "LNL"), under the National Bank Act, 12 U.S.C. §§ 85 and 86 ("sections 85 and 86"), to recover twice the amount of interest Fourchon had paid appellees on a loan that they had extended to it. Fourchon contended that it was charged by and had paid appellees interest on interest, contrary to article 1939 of the Louisiana Civil Code, and that accordingly appellees violated the provision of section 85 limiting national banks to "interest at the rate allowed by the laws of the State ... where the bank is located," in this instance Louisiana. It being undisputed that the loan in question was a "preferred mortgage" under the provision of the Preferred Ship Mortgage Act, 46 U.S.C. § 926(d) ("section 926(d)"), that "[a] preferred mortgage may bear such rate of interest as is agreed by the parties thereto," the district court, 548 F.Supp. 1258, held that section 926(d) precluded Fourchon's recovery, and accordingly granted LNB and LNL's motion for summary judgment. Fourchon appeals, contending that its suit is not barred by section 926(d), essentially for two reasons. Its first and principal claim is that section 926(d) speaks only to the "rate" of interest, and that its complaint is not of the *rate* of interest but rather of the charging of interest on interest irrespective of the resulting *rate*. We hold that the district court correctly rejected this contention and the proffered construction of section 926(d) on which it is based. Fourchon's second, alternative claim is that section 926(d) applies only to interest charges the parties have agreed on, and that it never agreed to pay the complained of interest on interest. The district court did not address any aspect of this second contention, and we reverse and remand with instructions that it do so, consistent with this opinion.

This suit arose out of a loan that LNL made to Fourchon to finance an oil screw, the Water Nymph. On July 6, 1979, LNL disbursed the $700,000 loan to Fourchon.[1]

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. According to Fourchon, it made LNB a defendant in this suit because LNL had assigned Fourchon's note to LNB. For simplicity, we refer to both parties as LNL. In the posture of the case to this time neither any of the parties nor the district court has made any distinction between LNB and its wholly owned subsidiary, LNL, and accordingly neither will we for purposes of our disposition of this appeal. Fourchon has also consistently taken the position that LNL, by virtue of its being a wholly owned operating subsidiary of LNB, created pursuant to 12 C.F.R. § 7.7376, is subject to sections 85 and 86 to the same extent as if it were a

The loan was evidenced by a promissory note for $700,000, dated July 6, 1979, and secured by a first preferred ship mortgage on the Water Nymph. The mortgage was also dated July 6, 1979, and was executed pursuant to the Preferred Ship Mortgage Act.

The note recites that it is payable in ninety-six consecutive equal monthly installments, each installment being in the amount of $13,125.79 and including both principal and interest, the first installment being due September 1, 1979 and the last August 1, 1987. The amortization schedule, prepared by LNL and furnished to Fourchon at some undisclosed time, reflects that the note payment schedule was based on an original principal amount of $708,400 advanced one month prior to September 1, 1979 rather than $700,000 advanced July 6, 1979, and shows each $13,125.79 installment being credited first to interest accrued to the date of payment and the balance to the reduction of principal.[2]

How the $8,400 became a part of Fourchon's unpaid balance is in dispute. According to LNL, it normally allowed its debtors thirty days in which to begin operating their vessels before the first installment on their loans became due. Under this plan, Fourchon would have owed its initial payment to LNL on August 5 or 6, 1979, and such payment would have been credited first to interest accrued during the preceding thirty days and the balance to the reduction of principal. At Fourchon's request, however, LNL agreed to an extension of time before the first installment became due, to September 1, 1979. Interest, at the rate specified in the note, on the $700,000 for the period of this extension amounted to $8,400. LNL contends that in substance it loaned an additional $8,400 to Fourchon effective August 1, 1979 which Fourchon used the same day to pay LNL the first twenty-seven days of interest on the $700,000. This $8,400 so "loaned" by LNL to Fourchon was added to the $700,000 loan for amortization purposes. Pursuant, then, to the amortization schedule, LNL charged Fourchon interest commencing August 1, 1979 both on the $8,400 and on the original $700,000 principal. LNL asserts that Fourchon agreed to pay the interest charged on the $8,400, and that the $8,400

national bank (as is its parent LNB), particularly by virtue of 12 C.F.R. § 7.7376(d)(1). This has not been questioned by LNL, LNB or the district court, and for purposes of our disposition of this appeal we merely assume the correctness of Fourchon's position in this regard.

2. The note would appear to likely be internally inconsistent on its face, since, at the 16 percent interest rate it provides, its $13,125.79 specified payments operate to discharge the principal and interest of a $708,400 loan made August 1, 1979 (as reflected by the amortization schedule) and do not fit a $700,000 loan made July 6, 1979, which is what the note purports to represent. A loan of $700,000 at 16 percent (the applicable rate here) to be discharged in ninety-six equal consecutive monthly payments of principal and interest, applied in the conventional manner, commencing a month after the loan was made, would provide for installments of approximately $12,970 each; however, if the first installment were fifty-seven days (the period from July 6 to September 1) after the loan (rather than thirty) after the loan, then an initial $12,970 installment would not suffice to cover accrued interest, and an initial installment of approximately $21,370 ($12,970 plus $8,400) would be required to both cover accrued interest and provide the same principal reduction as would have been achieved by a $12,970 initial payment made thirty days after the loan was disbursed (though even with such an initial $21,370 payment the length of time without any payment, principal or interest, would still be greater between the loan disbursement and the initial payment than during any other interval while the loan was outstanding).

We observe here that the note specifies an interest rate of 4.5 percentage points over the "Chase Manhattan 'Prime Rate,' " which latter rate the note recites was then 11.5 percent. The note provided that the interest rate would thereafter be adjusted quarterly, to reflect changes in the highest Chase Manhattan Prime Rate during the preceding quarter, and that additional interest payments (or credits) to take into account such rate changes would be made on the first day of each succeeding January, April, July and October. The amortization schedule expressly reflects an interest rate of 16 percent, an original loan principal of $708,400, and blended monthly payments of $13,125.79, with each payment being dated (the first September 1, 1979) and the amount of each respectively applied to principal and interest (and the resulting principal balance) being shown; the schedule is entitled "Fourchon, Inc."

was principal, being a second or additional loan.

Fourchon characterizes the $8,400 as interest. Its complaint, which attached a copy of the note and amortization schedule, states that the $13,125.79 monthly note payments were based on the amortization schedule prepared by LNL, and that "[t]he $8,400.00 difference between the $700,-000.00 original principal balance under plaintiff's note and the $708,400.00 original principal amount under the attached Amortization Schedule was equal to interest on plaintiff's note from July 6, 1979 (the date on which the note was executed) until August 1, 1979." Fourchon does not complain of having been required to pay the $8,400 itself, but rather of being charged *interest on the $8,400,* which it alleged constituted the "imposition of 'interest on interest' . . . in violation of Article 1939 of the Louisiana Civil Code," and hence violated section 85. In the summary judgment proceedings below Fourchon also submitted an affidavit stating that it had "never agreed to any second or additional loan . . . in connection with or in any way relating to the $8,400.00 in initial interest under Fourchon's July 6, 1979 loan . . .," that it "never executed a promissory note or other written agreement evidencing any such $8,400.00 'second loan,'" that it "never agreed, in writing or orally, to pay interest on the $8,400.00 alleged 'second loan,'" and that LNL "never explained to" Fourchon "that this $8,400.00 in initial interest was being added . . . into the original principal balance of plaintiff's

Amortization Schedule and taken into consideration in computing principal and interest installment payments under Fourchon's July 6, 1979 $700,000.00 promissory note."

As noted, Fourchon's suit is grounded on two sections of the National Bank Act, 12 U.S.C. §§ 85 and 86, which prohibit a national bank from charging a rate of interest higher than that allowed by the laws of the state in which the bank is located. Section 85 provides the prohibition:

"*Any association may take, receive, reserve, and charge* on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, *interest at the rate allowed by the laws of the State,* Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district *where the bank is located,* whichever may be the greater, *and no more,* except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter. . . ." (Emphasis added.) [3]

Section 86 provides, if a "greater rate of interest" is paid, a penalty of recovery of twice the amount of interest paid, provided suit is filed within two years of "the usurious transaction." [4]

---

**3.** Section 85 continues:

"When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. The maximum amount of interest or discount to be charged at a branch of an association located outside of the States of the United States and the District of Columbia shall be at the rate allowed by the laws of the country, territory, dependency, province,

dominion, insular possession, or other political subdivision where the branch is located. And the purchase, discount, or sale of a bona fide bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

**4.** Section 86 states:

"The taking, receiving, reserving, or charging a *rate of interest* greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the

Fourchon's complaint prayed for recovery of twice the interest it had paid to LNL under the loan during the two years immediately preceding the filing of the complaint. It did not assert that the 16 percent conventional rate on the loan was usurious and unauthorized by Louisiana law.[5] Rather, the complaint alleged that section 85 proscribed LNL's charging interest on the $8,400 interest because La.Civ.Code art. 1939 provides that "interest upon interest cannot be recovered unless it be added to the principal, and by another contract made a new debt."[6] Fourchon contends that the National Bank Act, in restricting a national bank to charging only "interest at the rate" allowed by the law of the state in which the bank is located, prohibits a national bank from charging interest on interest if the law of that state prohibits such practice.[7]

In granting LNL's motion for summary judgment, the district court stated that to dispose of the case, it found it necessary to evaluate only one of the five theories for dismissal urged by LNL. The court agreed with LNL's assertion that because its loan was made pursuant to the Preferred Ship Mortgage Act, section 926(d) of that Act precluded Fourchon's recovery under the National Bank Act. Section 926(d) provides that "[a] preferred mortgage may bear such rate of interest as is agreed by the parties thereto." The court found that section 926(d) authorized a lender to charge not only conventional rates of interest higher than those allowed by state law, but also interest on interest, even if prohibited by state law. Because section 926(d) authorized LNL to charge interest on interest and thereby overrode, as to preferred ship mortgages, Louisiana's prohibition against that practice, *J. Ray McDermott & Co., Inc. v. The Vessel Morning Star*, 457 F.2d 815 (5th Cir.1972), Fourchon could not recover under

---

greater *rate of interest* has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time *the usurious transaction* occurred." (Emphasis added.)

5. La.Civ.Code art. 2924, sets the legal rate of interest at 12 percent.

6. In its entirety, the version of article 1939 which was in effect when this loan was made provided:

"Except as provided by the Louisiana Consumer Credit Law and in loans made for agricultural purposes, interest upon interest cannot be recovered unless it be added to the principal, and by another contract made a new debt. No stipulation to that effect in the original contract is valid. The provisions of this Article shall be held to apply to all persons, partnerships, and corporations irrespective of custom or of the character of business in which they are engaged."

In 1982, article 1939 was amended to read:

"Interest upon interest cannot be recovered unless it be added to the principal, and by another contract made a new debt, subject to the following exceptions:

"1. As provided by the Louisiana Consumer Credit Law, or as specifically provided by law.

"2. In loans made for agricultural purposes.

"3. In matters preempted by federal law or by rules and regulations of federal agencies, including but not limited to the Federal Home Loan Bank, Federal Savings and Loan Insurance Corporation, Comptroller of the Currency, and the Federal Deposit Insurance Corporation.

"4. As provided in rules or regulations promulgated by the commissioner of financial institutions for supervised financial organizations as provided by R.S. 6:25.1.

"Subject to the exceptions in this article, no stipulation in the original contract authorizing recovery of interest upon interest is valid.

"The provisions of this article shall be held to apply to all persons, partnerships, and corporations irrespective of custom or of the character of business in which they are engaged." (Footnote omitted.)

7. The penalty under section 86 is recovery of twice *all* interest paid on the loan within the two years prior to suit, not just twice the portion of such interest as was in excess of the legal maximum. *First National Bank v. Watt*, 184 U.S. 151, 22 S.Ct. 457, 46 L.Ed. 475 (1902).

It appears that the initial six installment payments were made over two years prior to the filing of Fourchon's complaint. In a supplemental brief Fourchon states that "the loan was voluntarily prepaid in full in early 1982," and the context indicates that this refers to a time prior to February 18, 1982, the date the complaint was filed.

sections 85 and 86 because those sections only forbade charging rates of interest forbidden by state law for the same type of loan. *See Northway Lanes v. Hackley Union Nat. Bank & Trust Co.,* 464 F.2d 855, 861–64 (6th Cir.1972); *Fisher v. First National Bank of Omaha,* 548 F.2d 255, 258–61 (8th Cir.1977); *Hiatt v. San Francisco National Bank,* 361 F.2d 504 (9th Cir.), *cert. denied,* 385 U.S. 948, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966).

Fourchon does not dispute that section 926(d), *if applicable,* would override contrary state law and preclude recovery under sections 85 and 86; rather, as noted, Fourchon contends that section 926(d) is inapplicable because it relates only to the rate of interest, not to charging interest on interest, and because it applies only where the complained of interest has been agreed to, which Fourchon asserts was not the case here with respect to the alleged interest on interest.

However, preliminarily to the discussion of section 926(d), we must first inquire whether Fourchon may recover under the National Bank Act's sections 85 and 86, for LNL's charging interest on interest, as opposed to its charging an impermissibly high rate of interest. As mentioned above, section 85 allows a national bank to charge "interest at the rate" allowed by the law of the state where the bank is located, and section 86 provides the penalty where a "greater rate of interest" is paid. The question whether section 85 prohibits a lender from charging interest on interest, and whether section 86 provides a penalty therefor, is answered by determining whether the term "interest at the rate" in section 85 and the term "rate of interest" in section 86 encompass the charging of interest on interest.

The Supreme Court has made clear that sections 85 and 86 proscribe charging interest on interest where state law prohibits the practice. In *Citizens' National Bank v. Donnell,* 195 U.S. 369, 25 S.Ct. 49, 49 L.Ed. 238 (1904), a national bank in Missouri had charged interest on interest several times a year, in spite of a Missouri statute which provided that "interest shall not be compounded oftener than once a year." Section 3706 of the Revised Statutes of Missouri, however, generally allowed parties to agree in writing to a maximum interest rate of 8 percent per annum, and even with the compounding all interest charged did not exceed that figure. The Missouri Supreme Court held that the compounding was nevertheless illegal under Missouri law. *Citizens' National Bank v. Donnell,* 172 Mo. 384, 72 S.W. 925, 927, 929, 931–32 (1903). Holding that a borrower could recover under U.S.Rev.Stat. §§ 5197, 5198, the predecessors of sections 85 and 86, for a lender's having compounded interest too often in violation of state law, the United States Supreme Court stated:

> ". . . [the bank] contends that so long as the total sums received would not amount to more than 8 per cent on the debt, it has a right to charge them under U.S. Rev.Stat. § 5197, U.S.Comp.Stat. 1901, p. 3493, coupled with Mo.Rev.Stat. § 3706. . . . We are of a different opinion. The rate of interest which a man receives is greater when he is allowed to compound than when he is not, the other elements in the case being the same. *Even if the compounded interest is less than might be charged directly without compounding, a statute may forbid enlarging the rate in that way,* whatever may be the rules of the common law. *The supreme court of Missouri holds that that is what the Missouri statute has done.* On that point, and on the question whether what was done amounted to compounding within the meaning of the Missouri statute, we follow the state court. [Citation omitted.] Therefore, *since the interest charged and received by the plaintiff was compounded more than once a year, it was at a rate greater than was allowed by U.S.Rev.Stat. § 5197,* U.S.Comp.Stat. 1901, p. 3493, and it was forfeited." 195 U.S. at 373–74, 25 S.Ct. at 49–50 (emphasis added).

*Accord, Partain v. First National Bank,* 467 F.2d 167, 174 (5th Cir.1972).

Louisiana prohibits the charging of interest on interest. La.Civ.Code art. 1939. *See* note 6, *supra*. Because that prohibition applies to national banks by virtue of sections 85 and 86 and the *Donnell* case, Fourchon stated a valid cause of action against LNL and potentially could recover from LNL, depending on the success of LNL's defenses.

The Preferred Ship Mortgage Act's section 926(d) comes into play here. Fourchon concedes that the transaction consisting of the $700,000 loan and the mortgage on the Water Nymph was made pursuant to the Preferred Ship Mortgage Act, but asserts that section 926(d) of that Act does not cover the transaction. It argues primarily that the term "rate of interest" as used in section 926(d) does not encompass a lender's charging interest on interest. Fourchon suggests that in choosing the term "rate of interest" for section 926(d) Congress must have meant, respecting loans covered by the Preferred Ship Mortgage Act, only that the amount of interest which could be lawfully agreed on was unlimited by any maximum annualized fraction of the outstanding principal, and not that interest could be charged on interest. We reject this contention.

In *Donnell* the Supreme Court held that the practice of charging interest on interest, even when it did not produce a greater amount of interest than could have lawfully been obtained by a higher stated rate without compounding, was subsumed within a statutory prohibition whose scope was limited to charging "interest *at the rate* allowed by the laws of the State . . . and no more" (emphasis added). The federal law which spoke only to "the rate" at which interest could be charged was held to encompass the charging of interest on interest, and a state law forbidding the latter practice, regardless of the resulting level of true interest, was held to be one which limited "the rate" of interest. We recognize that in *Donnell* the Court was dealing with the National Bank Act and not the Preferred Ship Mortgage Act, but we can see no meaningful distinction between the former's "interest at the rate" (section 85) and the latter's "rate of interest" (section 926(d)). Indeed,

section 86, which was likewise before the Court in *Donnell,* speaks of "rate of interest," the exact same term as used in section 926(d), and plainly such term in section 86 has the same meaning as "interest at the rate" does in section 85. Fourchon suggests that there is a distinction between prohibited "usury," which concerns only the maximum rate of interest, and a prohibition of charging interest on interest regardless of the resulting true rate; but *Donnell* holds a prohibition of the latter type to be within section 86, which refers to the transactions for which its penalties may be recovered as "usurious." *Donnell* rejects precisely the same narrow reading of "rate of interest" which Fourchon urges on us. As the Court said in *Donnell:* "The rate of interest which a [lender] receives is greater when [it] is allowed to compound than when [it] is not, the other elements in the case being the same." *Id.* 195 U.S. at 374, 25 S.Ct. at 50. The rate of interest which a lender receives under a preferred ship mortgage is greater when that interest is compounded. Fourchon gives no persuasive justification, and we know of none, why the logic of *Donnell* does not befit an interpretation of the phrase "rate of interest" under the Preferred Ship Mortgage Act.

Moreover, when the Preferred Ship Mortgage Act was passed *Donnell* had been on the books approximately sixteen years, and its interpretation that a federal statute relating to the "rate" of interest, and characterizing transactions for which penalties were provided for charging a "greater rate of interest" than allowed as "usurious," covered the practice of charging interest on interest, may be presumed to have been well known to Congress.

Beyond this, the policies behind the Preferred Ship Mortgage Act support an expansive interpretation of the term "rate of interest" in section 926(d). The Act is part of the Merchant Marine Act of 1920, which declared that "the policy of the United States [is] to do whatever may be necessary to develop and encourage the maintenance of . . . a merchant marine" to further "national defense and for the proper growth of

. . . foreign and domestic commerce" of the United States. 46 U.S.C. § 861. In this regard, "[t]he passage of the Ship Mortgage Act came about primarily from the necessity of affording substantial security to persons supplying essential financing to the shipping industry." *J. Ray McDermott & Co., Inc. v. The Vessel Morning Star,* 457 F.2d at 817 (citing *Merchants & Marine Bank v. The T.E. Welles,* 289 F.2d 188, 193–94 (5th Cir.1961)). The Act was passed to provide incentives to creditors to invest in the development of the shipping industry. Because through the Act Congress meant to encourage creditors to lend money to persons and businesses contributing to the development of the shipping industry, we infer that among the incentives included in the provision of section 926(d) that a lender could charge any agreed "rate of interest" on a ship mortgage was authorization for a lender to charge any agreed interest on interest.

Fourchon also argues that state policies against lenders charging interest on interest must override the federal policies behind the Preferred Ship Mortgage Act and that the Act should therefore not be interpreted to apply to a lender charging interest on interest. We do not doubt that Louisiana has a strong policy against creditors charging interest on interest, as evidenced in article 1939 of the Louisiana Civil Code. We also recognize that article 1939 applies to corporations as well as to individuals. Nonetheless, we believe that the federal law and policies in this area preempt those of the state.

We have described Congress' motivation for passing the Preferred Ship Mortgage Act as including an intention "that the ready availability of credit to support interstate commerce should not be impeded by parochial limitations and that the Act would wholly and completely supersede state law and practice in every respect." *Morning Star,* 457 F.2d at 818. In *Nat G. Harrison Overseas Corp. v. American Barge*

*Sun Coaster,* 475 F.2d 504, 506 (5th Cir. 1973), we reaffirmed *Morning Star's* counsel against application of state law to preferred ship mortgages as tending to "introduce an undesirable lack of uniformity" in the Preferred Ship Mortgage Act. And, indeed, we have held that section 926(d) "expressly gives the parties complete freedom with respect to the interest rates that a preferred mortgage may bear," and that "state usury laws" are preempted by section 926(d) where a preferred ship mortgage is involved, since they "would contravene the freedom-of-contract principle of section 926(d)." *Walter E. Heller & Co. v. O/S SONNY V.,* 595 F.2d 968, 973 (5th Cir.1979).[8] *See also Nat G. Harrison Overseas Corp., supra; C.I.T. Corp. v. M/V Miss Eileen,* 447 F.2d 761, 763 (5th Cir.1971) ("It is of course true that federal law, specifically the Ship Mortgage Act of 1920, 46 U.S.C. § 911, et seq., governs the construction and validity of the note and mortgage"). While in *Walter E. Heller & Co., supra,* we held that, respecting a preferred ship mortgage note which made specific reference to state law, Texas law could be looked to in the application of a clause allowing "reasonable attorney fees (fifteen percent if not prohibited by law)," we premised this result on the assumption that it

"... need not frustrate a mortgagee's wish to impose a penalty, liquidate the costs of enforcement, or otherwise protect himself from the uncertainties of enforcement, for *section 926(d) enables him to exact extra charges in the form of added pre-maturity or post-maturity interest." Id.* at 975 (emphasis added).

Yet Fourchon would have us qualify that construction of section 926(d), by subjecting it to an exception for "interest on interest." We find no warrant for such an exception.

Although the states have strong policies against charging excessive interest, federal preemption of state statutes implementing that policy is mandated by the policies behind section 926(d); to wit, furthering the

---

8. And, we note again that section 86, the penalties under which are the only recovery sought by Fourchon, characterizes the transactions as to which such penalties are authorized as "usurious."

ready availability of credit for those in the shipping industry. Those policies, which favor creditors, preempt the policies of state statutes limiting the amount of interest chargeable, enacted to protect borrowers.

Likewise, we find that the same federal policies preempt Louisiana's statute which prohibits lenders from charging interest on interest. Such state policies are certainly no stronger, nor any more aimed at the protection of borrowers, than the policies of the state laws limiting the amount of interest chargeable. Indeed, so far as concerns national banks, state policies against charging of interest on interest, just like those providing for maximum rates of interest, are enforced under section 86 which provides penalties only in respect to an excessive "rate of interest" and refers to the prohibited transactions as being "usurious." *Donnell.* "Although state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system it cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law or to disrupt the harmony it strives to bring to international and interstate relations." *Morning Star,* 457 F.2d at 818. We discern no relevant gaps in the federal scheme insofar as it concerns the extension of ship mortgage credit to persons and businesses in the shipping industry. The Preferred Ship Mortgage Act itself and our precedential interpretations of it lend themselves to the determination that in the area of such credit extension to the shipping industry, the federal Act must supersede state laws respecting limitations or restrictions on the charging of interest. We infer that within its goals of making such credit available to this industry, Congress included, in section 926(d), the authority for lenders to charge agreed interest upon interest. This federal Act must supersede Louisiana law to successfully implement federal policy.

Having concluded that the applicability of section 926(d) is not defeated by reason of the fact that Fourchon's suit under sections 85 and 86 of the National Bank Act complains of the charging of interest on interest contrary to Louisiana law, we turn to Fourchon's second contention, that the Fourchon/LNL transaction is not covered by section 926(d) because Fourchon did not *agree* to pay the complained of interest on interest. Section 926(d), Fourchon asserts, only authorizes lenders to charge interest greater than that authorized by state law if the borrower agrees to that assessment.

As noted, Fourchon's affidavit filed in the district court states in substance that Fourchon never agreed to pay interest on the $8,400, which its complaint alleges constituted interest on the $700,000 loan from its date to August 1, 1979. In its supplemental memorandum filed below in opposition to LNL's motion for summary judgment, Fourchon pointed out that section 926(d), by its terms, is limited to situations where the interest charged is that "agreed by the parties." The district court, however, did not address or acknowledge any aspect of that contention.

Section 926(d) does not state that a preferred ship mortgage may bear whatever interest the lender happens to desire. Rather, it states that "[a] preferred mortgage may bear such rate of interest *as is agreed by the parties thereto.*" (Emphasis added.) As previously observed, we explained in *Walter E. Heller & Co., supra:*

> " . . . Because application of state usury laws . . . would contravene *the freedom-of-contract principle of section 926,* usury laws have no application in actions involving a preferred ship's mortgage." 595 F.2d at 973–74 (emphasis added).

*See also C.I.T. Corp. v. M/V Miss Eileen,* 447 F.2d at 763 (remanding a judgment against the borrower under a preferred ship mortgage for further proceedings in which the district court is to "be sure that it has not allowed interest in excess of that specifically agreed to by the parties in the note and mortgage").

■ Section 926(d) gives the parties freedom to contract respecting the interest to be charged; it does not give the lender the freedom to impose whatever interest he chooses. Although section 926(d) was enacted to remove any "parochial limitations"

to the ready availability of credit, *see Morning Star,* 457 F.2d at 818, nothing in the words of the statute or its purpose suggests that it allows a lender to impose interest charges not then or theretofore agreed to by the borrower. We accordingly hold, for purposes of this suit, that to use section 926(d) as a defense to Fourchon's claim under sections 85 and 86, LNL must show that Fourchon agreed to the interest on interest.

Whether there was such an agreement was not addressed by the district court, and we will accordingly remand the case to it for consideration of the matter in the first instance. We also observe that the present record is indeed sparse in this respect, and probably inappropriately so for summary judgment, though we do not necessarily preclude that form of resolution, particularly on a more complete development of the facts. For example, it does not appear when Fourchon received the amortization schedule, which plainly reflects the interest charge on the $8,400, and whether this was at or before the execution of the note or the making of the first or some subsequent payment on it. There is no evidence of whether the parties had any discussion regarding how the payment of interest on the $700,000 for the period July 6 to August 1, 1979 was to be handled, or, if so, what the substance of that discussion was. The district court may also need to address wheth-

er, or under what circumstances, Fourchon's execution of, and/or making payments pursuant to, the note which provides for the installments which Fourchon claims included the complained of interest on interest, amounted to its agreement to pay such interest for purposes of section 926(d).

We observe that ultimately the question of whether there was an agreement for purposes of section 926(d) poses a question of federal law, though this does not preclude some reference to state law principles so far as they are not antithetical to the freedom of contract which section 926(d) endorses in this respect. Absent an adequate factual context, it is premature for us to further consider this question in the present posture of the case.

If the district court decides that Fourchon had not agreed to pay interest on interest, Fourchon will not automatically recover. LNL will still be entitled to have the district court pass upon its other defenses, none of which are presently before this Court.[9]

In sum, we find that section 926(d) can provide a defense to sections 85 and 86 claims brought against a lender who collects from a borrower interest on interest contrary to the law of the state where the lender is located, and we hold that the district court correctly determined and ap-

---

**9.** We note, for example, that LNL alleges that the $8,400 comprised a distinct loan which it made to Fourchon, separate from the loan for $700,000.

   Under Louisiana law, "interest upon interest cannot be recovered unless it be added to the principal, and by another contract made a new debt." La.Civ.Code art. 1939. If LNL proves that the $8,400 was a new debt for which a new contract had been made, LNL may not have violated article 1939 by charging interest on interest. Fourchon, however, contends that in the absence of agreement Louisiana law prohibits interest as high as 16 percent, which it claims was the rate of interest charged on the alleged $8,400 interest here, La.Civ.Code arts. 1940, 2924, and that the "corporate" defense applies only to "agreed" interest. LSA–R.S. 12:703, 9:3509.

   Similarly, we do not address LNL's defense that even if it did charge unauthorized interest on interest, it did not do so "knowingly," as

required by section 86. Nor do we explore whether waiver or estoppel might be available to LNL.

   The factual development of this record is too sparse to warrant our discussion of these issues, none of which have been addressed by the district court, and all of which may ultimately become immaterial to the resolution of this case.

   LNL also contends that even if it should be liable for charging unagreed interest on the $8,400, nevertheless section 926(d) protects the indisputably agreed interest on the $700,000. Of course, it may be unnecessary to ever reach this issue, the record is uninformative with respect to whether, or to what extent, the interest on the $8,400 may be considered as separate from that on the $700,000, and accordingly, we pretermit further discussion of this matter which, should it arise, is best considered by the district court in the first instance and in the light of a fuller factual development.

plied that principle to this case, and we affirm in all respects that aspect of the ruling below. To make out the defense under section 926(d), however, the lender must show that the borrower agreed to the complained of interest on interest. Because the district court did not determine whether Fourchon had agreed to the complained of interest on interest, we reverse and remand for further proceedings consistent with this opinion.[10]

REVERSED AND REMANDED.

SHAW, District Judge, dissenting:

I respectfully dissent.

I have no quarrel with the majority's conclusion that the phrase "rate of interest" contained in 46 U.S.C. § 926(d) includes within its meaning the charging of interest on interest. However, I do take issue with the majority's conclusion that section 926(d) provides a valid defense to a claim under 12 U.S.C. §§ 85 and 86 only when the lender and borrower have agreed upon the rate of interest to be charged. In my view, sections 85 and 86 have no application to a loan made pursuant to the Preferred Ship Mortgage Act, 46 U.S.C. § 911, et seq.

12 U.S.C. § 85 was enacted as part of the National Bank Act to place national banks on an equal competitive basis with state banks. *Tiffany v. Bank of Missouri,* 18 Wall. 409, 85 U.S. 409, 21 L.Ed. 862 (1874). It provides in pertinent part:

"Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter . . . "

12 U.S.C. § 86 is the counterpart to section 85. It provides:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bills, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided,* That such action is commenced within two years from the time the usurious transaction occurred."

---

**10.** The case came before the district court on motions under Fed.R.Civ.P. 12(b)(1) and (6) to dismiss for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted. The court treated the motions as motions for summary judgment. In granting the motions and rendering judgment, the district court did not expressly state whether the dismissal was for lack of subject matter jurisdiction or on the merits. We treat it as the latter.

A dismissal for lack of subject matter jurisdiction would have been inappropriate here. It has long been settled that suits under sections 85 and 86 of the National Bank Act, and the predecessors of those sections, "are federal question cases." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3571 at 478. *See, e.g., Talbot v. First National Bank,* 185 U.S. 172, 179–80, 22 S.Ct. 612, 615, 46 L.Ed. 857 (1902); *Partain v. First National Bank,* 467 F.2d 167, 171–72 (5th Cir. 1972); *Brown v. First National City Bank,* 503 F.2d 114, 117 (2d Cir.1974). We note that although 28 U.S.C. § 1331 was the only basis of jurisdiction pleaded, when this suit was filed the amount in controversy requirement had been removed from section 1331. The district court's determination that section 926(d) of the Preferred Ship Mortgage Act precluded recovery under the National Bank Act did not deprive the court of jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 449 (5th Cir.1983).

The provisions of the Preferred Ship Mortgage Act were enacted to foster growth of the nation's merchant marine by encouraging investment in the shipping industry. Section 926(d) provides one of the primary incentives to potential investors. It provides:

"A preferred mortgage may bear such rate of interest as is agreed by the parties thereto."

I understand the majority opinion to hold that section 926(d) presents a valid defense to a claim under sections 85 and 86 only when the lender and borrower agreed to the rate of interest that was charged. If the lender and borrower did not agree to the rate of interest that was charged, and if the rate of interest so charged exceeded the rate of interest that could be charged under state law, then a viable claim may be asserted under sections 85 and 86.

Implicit in this holding is the assumption that if, for whatever reason, a lender and borrower have failed to reach an agreement on the rate of interest to be charged on a loan secured by a preferred ship mortgage, then the rate of interest which may accrue on the loan is automatically governed by state usury laws; for under the facts of this case, it is only when the applicable state interest rate has been exceeded that section 86 comes into play. In my view, such an assumption is erroneous. State usury laws have no application to a loan secured by a preferred ship mortgage regardless of the existence of an agreement between the lender and borrower as to the rate of interest to be charged.

The Preferred Ship Mortgage Act was designed to avoid parochial limitations on the ready availability of credit to the shipping industry by wholly and completely superseding state law and practice in every respect. *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.1972) (en banc). One of the primary parochial limitations on the ready availability of credit was the ceiling on interest rates that varied from state to state. Section 926(d) was included in the Preferred Ship Mortgage Act to avoid these varying interest ceilings and afford a lender the right to contract an appropriate interest rate without reference to state law. In this way lenders could offset the risks inherent in the investment of vast sums of money in the shipping industry by demanding whatever rate of interest the market would bear. The intent was to completely eliminate the application of state usury laws.

The majority opinion contravenes this intent by holding, in effect, that if the parties to a loan secured by a preferred ship mortgage have a misunderstanding as to the rate of interest to be charged, then state usury law determines the ceiling on the interest rate that may be charged. I cannot agree with such a holding.

I am of the firm opinion that section 926(d) completely supersedes state usury laws regardless of the existence of an agreement between the parties. This view is consistent with the Congressional intent underlying the enactment of the statute which was to completely eliminate parochial limitations on the rate of interest that could be charged. When Congress wrote section 926(d) to provide that a preferred mortgage could bear such rate of interest "as is agreed by the parties thereto" it did not mean to imply that state usury laws governed whenever the parties had a misunderstanding as to the interest rate to be charged. By including the language "as is agreed by the parties thereto" in section 926(d), Congress was simply recognizing the fact that a meeting of the minds is an essential element of any conventional contract.

Since in my view Congress completely eliminated the application of state usury laws through enactment of section 926(d), I see no room for the application of section 86. Section 86 would permit relief only if applicable state usury laws have been exceeded. Inasmuch as state usury laws have been superseded and have no application to loans secured by preferred ship mortgages, section 86 can never come into play. I believe to rule otherwise is to undermine the congressional intent underlying the enactment of section 926(d).

There is another reason why I believe the majority opinion to be incorrect. The ma-

jority holds that section 926(d) presents a valid defense to a claim under sections 85 and 86 only when the lender and borrower have agreed upon the rate of interest that has been charged. If, for whatever reason, the lender and borrower fail to reach an agreement on the rate of interest, then section 926(d) cannot be asserted as a defense and recovery can be had under section 86. I believe such a rule of law is inherently unfair to an innocent lender who makes a loan erroneously and in good faith believing that the borrower has agreed to the terms of the loan.

For instance, in this case appellant has asserted that it never agreed to pay interest on the $8,400 amount. Appellees, of course, have taken the opposite view. It is quite possible that appellees charged the interest based upon an erroneous, but good faith, belief that appellant had agreed to pay such interest. If this is so, then under the broad rule pronounced by the majority, the appellees, who in good faith had attempted to do only that which section 926(d) allows, are now subject to the punitive provisions of section 86. Such a result is unduly harsh and disserves the policies underlying the Preferred Ship Mortgage Act. Potential investors receive little encouragement from a rule of law that results in a forfeiture of interest and the imposition of penalties whenever there is an innocent but good faith error as to the existence of an agreement on the interest rate to be charged.

In my view, this case presents nothing more than a contractual dispute. Either appellant agreed to pay interest or it did not. If there was an agreement, then appellant.has no claim. If there was not an agreement, then appellant may resort to recognized principles of contract law for an appropriate remedy. In any event, sections 85 and 86 have no application.

For the foregoing reasons, I would affirm the ruling of the district court.